386 So.2d 831 (1980)
Sheri Nicole BENTON, a Minor, by Her Next Friend and Mother, Jo Ann G. Benton, and Jo Ann G. Benton, Individually, Appellants,
v.
The SCHOOL BOARD OF BROWARD COUNTY, Florida, Appellee.
No. 78-2642.
District Court of Appeal of Florida, Fourth District.
August 6, 1980.
*832 Carol M. Anderson of Anderson & Anderson, P.A., Fort Lauderdale, and Karen Kugell, Plantation, for appellants.
W.M. O'Bryan and E. Bruce Johnson of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee.
HURLEY, Judge.
This appeal arises from a tort action based upon an allegation of negligent supervision in the schoolroom. The trial court deferred ruling on defendant/school board's motion for directed verdict and permitted the case to go to the jury which rendered a verdict for plaintiffs/appellants. The court then granted defendant's motion and set the verdict aside. We affirm.
The facts are straightforward and simple. They involve a kindergarten student whose fingertip was caught in a school doorjamb. The accident occurred at the Broward Estates Elementary *833 School in which two classrooms are connected by a common hallway. Off the hallway is a door to the girls' bathroom and a door to the boys' bathroom. Since the facilities are accessible to students from both classrooms, the school promulgated rules regulating their use. Students are required to raise their hand and obtain permission before leaving the classroom. Only one child at a time may leave the classroom and students are instructed that if the restroom door is closed, they are to knock on the door before entering in order to determine whether the room is occupied. Although this system is not ideal in that it permitted two five-year olds to be alone in the vicinity of the bathroom, it had operated without incident until the accident giving rise to this cause of action and thus no need to institute a change was apparent.
Sheri Benton enrolled in the kindergarten class at Broward Estates Elementary School in August of 1975. She followed the above rules for approximately seven months until March 29, 1976, when, after receiving permission to leave the room, she approached the door to the girls bathroom. What happened next is described by the testimony of Hazel Hankerson, the school principal, who received the identical story from both Sheri and Sarah, a child from the next classroom:
That she [Sarah] was sitting on the stool, that Sheri came and pushed the door open, she tried to close it and Sheri's finger was caught. (TR 75)
In addition to Mrs. Hankerson, three people testified as to the incident: Sheri, Sarah and Sheri's substitute teacher, Judith Dodge. Sarah had virtually no recollection of the event which had occurred two and one-half years prior to the trial, and Sheri's recollection was only sketchy. She testified that:
She [Sarah] had stopped in the hallway and she shut the door.
.....
I was standing right here. I stuck my finger  I do like this and she shut the door. (TR 40)
Mrs. Dodge indicated that she first realized another child had been using the bathroom
When Sheri's scream came back through the door and said that another girl slammed the  my finger in the door. (TR 142)
As a result of this occurrence, the top of Sheri's left index finger was severed from her hand. Her mother, on behalf of Sheri and herself, instituted suit against the School Board of Broward County.
Before discussing plaintiffs' theory of recovery, it is important to note what this case is not about. It does not involve an allegation of defective design or installation of the bathroom door. Plaintiffs do not contend that the School Board was negligent in maintaining bathroom facilities outside the kindergarten classroom or in failing to promulgate appropriate rules for their use. Rather, plaintiffs' entire case is predicated upon an allegation of negligent supervision. This theory was succinctly put by plaintiffs' counsel: "... this cause of action arose as a result of conduct of Mrs. Dodge's [the substitute teacher's] lack of supervision... ." This allegation was specifically pled in greater detail in the following paragraphs from plaintiffs' complaint:
That on or about March 29, 1976, at or about 12:30 in the afternoon, at Broward Estates Elementary School, Broward County, Florida, where the Plaintiff, Sheri Nicole Benton, a minor, was duly enrolled as a student in a kindergarten class in session at that said school; that the said minor, while in the classroom with other school children, was in the area of the bathroom door, which was being opened and closed in a "tug-of-war" fashion by the minor children in the classroom, including the Plaintiff, Sheri Nicole Benton; that at said time and place, the bathroom door slammed shut on the minor Plaintiff's left hand, causing a traumatic amputation of the left index finger, as well as other serious bodily injuries.
At said time and place, a substitute teacher, an agent, servant and/or employee of the defendant The School Board of Broward County, was in the classroom, had knowledge of the student's "tug-of-way" activities and had a duty to guard against allowing the children to engage in any activities, including the "tug-of-war" activities, which activity involved an unreasonable risk of serious harm to the children, including, Sheri Nicole Benton, a minor, who because of her age, was not likely to realize the risk involved in playing "tug-of-war" with a door; and that The School Board of Broward County knew or had reason to know of the risk to such children, including the Plaintiff Sheri Nicole Benton, a minor and that the defendant, The School Board of Broward County was negligent in allowing such activities to continue in the classroom.
Plaintiffs' fundamental problem is that they were unable to prove any of the above allegations. The charge that a "tug-of-war" took place, for example, is an intriguing *834 idea but it was not borne out by the evidence. If anything, the record demonstrates that this was a notion conceived and nurtured in the mind of plaintiffs' counsel. The following exchange during Mrs. Hankerson's testimony is the sole evidentiary reference to a "tug-of-war":
Q. Did you learn that there was a tug-of-war between the children?
A. If you want to call it that; one sitting on the stool, the other one trying to get in, if that was a tug-of-war. (TR 75)
All the evidence from the participants and the on-the-scene witnesses indicates that this was an immediate, instantaneous event to which the teacher responded the moment she heard Sheri cry out.
If the evidence fails to support plaintiffs' contentions, how then could the teacher be found negligent? What action or inaction on her part was improper? The facts suggest but one possibility. Apparently the jury believed it was within its province to find that the teacher had an affirmative duty to leave the classroom and accompany the child to the bathroom door. We cannot agree. Not only would this be impractical and unrealistic, but it would impose a duty not founded in law.
An analysis of school injury cases begins with the recognition that teachers and school boards are neither insurers of the students' safety, nor are they strictly liable for any injuries which may occur to them. Lauricella v. Board of Education, 52 A.D.2d 710, 381 N.Y.S.2d 566 (4th Dept. 1976); Annot., 36 A.L.R.3d 330 (1971). Teachers and school boards do, however, have an obligation to supervise the activity of students when the school is entrusted with their care. Barrera v. Dade County School Board, 366 So.2d 531 (Fla. 3d DCA 1979); McLeod v. Grant County School Dist. No. 128, 42 Wash.2d 316, 255 P.2d 360 (1953); Annot., 38 A.L.R. 3d 843 (1971).
In those instances where lack or insufficiency of supervision is charged, the teacher's duty of care to the pupil is either described as reasonable, prudent, and ordinary care, or as that care which a person of ordinary prudence, charged with the duties involved, would exercise under the same circumstances. Miller v. Griesel, 261 Ind. 604, 308 N.E.2d 701 (1974); Swartley v. Seattle School Dist. No. 1, 70 Wash.2d 17, 421 P.2d 1009 (1966); Connett v. Fremont County School Dist., No. 6, 581 P.2d 1097 (Wyo. 1978).
Some courts have likened a teacher's duty of care to that of a reasonable and prudent parent. Ballard v. Polly, 387 F. Supp. 895 (D.D.C. 1975); Ohman v. Board of Education, 300 N.Y. 306, 90 N.E.2d 474 (1949); Swaitkowski v. Board of Education, 36 A.D.2d 685, 319 N.Y.S.2d 783 (4th Dept. 1971). This is an attractive formulation, but it may not always be adequate. For example, it is conceivable that in certain instances, due to the number of students involved and the danger of an activity, teachers might be required to exercise a higher degree of care than would be expected of a reasonable and prudent parent. On the other hand, at least one Florida case has suggested that the parental standard is too stringent. King v. Dade County Board of Public Instruction, 286 So.2d 256 (Fla.3d DCA 1973), cert. denied, 294 So.2d 89 (Fla. 1974).
This debate need not be resolved today. The parental standard, however, is particularly useful in this case for it underscores the implausibility of plaintiffs' claim. Even if Sheri's teacher were held to the standard of a reasonable and prudent parent, she would not have been obliged to accompany the child to the bathroom door. No one would contend that a parent in a multi-child home would consider it necessary to shoulder a similar burden. In legal terms, this indicates that the injury was unforeseeable. Segerman v. Jones, 256 Md. 109, 259 A.2d 794 (1969). Furthermore, plaintiffs' contentions are demonstrably unreasonable in the context of this case for they would require the teacher to abandon her co-existing responsibility to the remainder of the class.
Several courts have articulated the principle that, absent special dangerous circumstances, *835 a teacher or school board does not have the duty of providing supervision of all movements of all pupils at all times. Woodsmall v. Mt. Diablo Unified School Dist., 188 Cal. App.2d 262, 10 Cal. Rptr. 447 (1st DCA 1961); Conway v. Board of Education, 11 Misc.2d 162, 171 N.Y.S.2d 533 (Sup.Ct. 1958); Fagan v. Summers, 498 P.2d 1227 (Wyo. 1972). This issue was addressed in Morris v. Ortiz, 103 Ariz. 119, 437 P.2d 652, 654 (1979), when the court said:
To hold that Ortiz [the teacher] had to anticipate Gillmor's [the student] act and somehow circumvent it is to say that it is the responsibility of a school teacher to anticipate the myriad of unexpected acts which occur daily in and about schools and school premises, the penalty for failure of which would be financial responsibility in negligence. We do not think that either the teacher or the district should be subject to such harassment nor is there an invocable legal doctrine or principle which could lead to such an absurd result.
The application of this principle to other "doorjamb injury" cases has consistently led to findings of no liability. See, e.g., Luna v. Needles Elementary School Dist., 154 Cal. App.2d 803, 316 P.2d 773 (4th DCA 1957); Conway v. Board of Education, supra. Luna is remarkably similar to the case at bar. It too involved a five year old kindergarten student who lost the top portion of his left index finger when another student pushed a school gate. Affirming the trial court's dismissal of the action, the appellate court said:
There was no substantial evidence to show negligence on the part of the teacher, and negligence could not be inferred from the mere fact that the accident occurred on school ground while the teacher was not at the particular spot at the moment. There is no evidence that would justify the inference that this teacher should reasonably have expected not only that this boy would climb this wall but that his hand would slip at the very moment another boy was moving the gate. 316 P.2d at 776.
Whether a teacher has breached a duty of care by failing to provide adequate supervision is usually a question of fact for the jury. Rodrigues v. San Jose Unified School Dist., 157 Cal. App.2d 842, 322 P.2d 70 (1st DCA 1958); Cianci v. Board of Education, 18 A.D.2d 930, 238 N.Y.S.2d 547 (2d Dept. 1963). Nonetheless, the plaintiff has the initial burden of producing some reasonable evidence of deviation from the standard of care before the matter may be submitted to the jury. Tiny's Liquors, Inc. v. Davis, 353 So.2d 168 (Fla. 3d DCA 1977). Plaintiffs failed to satisfy this minimal threshold requirement and, accordingly, the trial court properly granted defendant's motion for directed verdict.
In conclusion, it seems appropriate to note that we are a society which has come to enjoy, indeed, to expect, virtual mass insurance coverage. Concepts like no-fault and expanding theories of strict liability easily explain the impulse to sustain the jury's verdict in this case. In fact, it might well be societally beneficial to encourage school boards to adopt insurance plans which would permit recovery by injured students without regard to fault. Such action, however, is the prerogative of the legislature. Absent such legislation, courts must continue to abide by the traditional tort concepts of duty, breach, and injury proximately caused thereby. The latter mode does not permit recovery in this case. The judgment below is
AFFIRMED.
ANSTEAD, J., and RIVKIND, LEONARD, Associate Judge, concur.