**DISTRICT OF COLUMBIA, Appellant,**

v.

**Ruby B. CASSIDY, et al., Appellees.**

**No. 81–103.**

District of Columbia Court of Appeals.

Argued April 29, 1982.

Decided Aug. 18, 1983.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Judith M. Rogers, Corp. Counsel and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., and David P. Sutton, Asst. Corp. Counsel, Bowie, Md., were on brief, for appellant.

Ken M. Gozur, Washington, D.C., with whom Andrew C. Bisulca, Falls Church, Va., was on brief, for appellees.

Before KERN, NEBEKER and MACK, Associate Judges.

PER CURIAM:

This matter arose out of a personal injury action brought by appellees, Ruby B. Cassidy and Robert B. Cassidy, as parents and next friends of Robert DeShawn Cassidy (DeShawn), a minor, against the District of Columbia when DeShawn, a kindergarten student, was struck in the left eye by a stick thrown by another student on December 2, 1977. This accident resulted in the loss of DeShawn's eye. At the jury trial appellees alleged that DeShawn's injuries were proximately caused by the District's negligent failure to exercise reasonable supervision of two kindergarten classes which were playing on the school's playground at that time. Following the denial of the District's motion for a directed verdict at the close of appellees' case, and again at the close of all the evidence, the case was submitted to the jury. The jury returned a verdict of $120,000 in favor of DeShawn and $30,000 in favor of his parents. Judgment was entered in accordance therewith.

Appellant's subsequent motion for a judgment *non obstante veredicto* having been denied, this appeal was taken. We now find ourselves presented with the precise question which was before the court, sitting en banc, in the case of *District of Columbia v. Cooper,* 445 A.2d 652, 653 (D.C. 1982): "whether there was sufficient evidence to support the jury's conclusion that the District of Columbia, by any negligent act or failure to act, proximately caused injury to appellee (footnote omitted)." We find that the jury verdict is not supported by sufficient evidence and therefore reverse the judgment.

I.

On December 2, 1977, DeShawn was a student in a kindergarten class at Keene Elementary School taught by Mrs. Elaine Williams. There was one other kindergarten class at the school which was regularly taught by Mrs. Norris, but Mrs. Annie Gales was acting as a substitute teacher for Mrs. Norris during the period November 17 through December 26, 1977. There were approximately 48 children in the two combined classes.

Testimony at trial established that a schedule had been developed by the two kindergarten teachers and approved by the school principal, Ms. Sehon Grigsby, which required one teacher to supervise the two classes during the one-half hour lunch break and the other teacher to supervise the two classes during the one-half hour playground recess. This plan was necessary to permit both teachers to take a one-half hour lunch break as called for in their union contract. Ms. Grigsby, after reviewing this schedule and discussing it with the teachers, "expressed some concern about the children on the playground," since "when any children are on the playground, I am always more concerned," because the "playground being a larger area, lends itself to more things than a classroom." Ms. Grigsby asked the teachers if they would both volunteer to watch the children during the recess period, and "they agreed to this, if it was at all possible."

On December 2, 1977, Mrs. Williams was responsible for watching the children dur-

ing the lunch period and Mrs. Gales was to supervise the children during the playground recess. However, Mrs. Williams decided to accompany her class to the playground that day at approximately 1:00 p.m., shortly followed by Mrs. Gales' class. There were no other classes on the playground at that time.

The school's playground, covering the length of the school and beyond, was a large blacktop area. The children were not permitted to play near the "dumpster" trash container or the steps with railings behind the dumpster which were located at one end of the playground, but were restricted to the rear portion of the playground which contained the play equipment "where you can keep control over all of them, not to run around the whole playground." On December 2, the children were playing in this area and the teachers positioned themselves between the school building and the play equipment about 18–20 feet from the children. According to Mrs. Williams, all of the students were in front of her; Mrs. Gales testified that there were a few children behind her. At about 1:30 p.m., Mrs. Williams excused herself from the playground to go to the restroom, and Mrs. Gales agreed to continue to watch the two classes. At this time, Mrs. Gales was approximately eight feet from the play equipment and was "revolving and turning all around."

It was during the time of Mrs. Williams' absence that the accident occurred. Several children brought DeShawn, whose eye was bleeding, to Mrs. Gales who had neither heard an outcry nor seen what had happened. When Mrs. Williams returned from the ladies' room, about five to seven minutes after she left, she was met by Mrs. Gales and DeShawn who were walking toward the school. Mrs. Williams took DeShawn to the school office and Mrs. Gales remained with the children on the playground.

DeShawn testified that he and his friend, Frank Washington, were playing a game called "Marine Boy." Marine Boy was not an organized school-sponsored game, but was a fictional game, created by the children. According to DeShawn, Marine Boy "lives underwater, and he has an underwater boomerang" that he throws.[1] DeShawn testified that they were playing this game near the steps leading to the auditorium, which would have been directly across the playground from the slides and monkey bars. DeShawn saw Frank with a stick in his hand, which he approximated at trial to be 11 inches long. DeShawn then turned away "for about five seconds," and then turned back round toward Frank, when he was immediately hit in the eye. Frank testified that he had held the stick for six seconds before he accidently threw it at DeShawn.

## II.

While normally the jury is the trier of fact, *District of Columbia v. Cooper, supra,* 445 A.2d at 655, a trial court may "remove from jury consideration those cases in which the facts, viewed most favorably to the nonmoving party, permit but one reasonable conclusion as to the proper judgment (footnote omitted)." *Faniel v. Chesapeake & Potomac Telephone Co.,* 404 A.2d 147, 150 (D.C.1979). A judgment n.o.v., used by the trial court to render the verdict mandated by law irrespective of the verdict issued by the jury, *id.,* operates under the same standard as the directed verdict. *Rich v. District of Columbia,* 410 A.2d 528, 532 (D.C.1979); *see generally* 5A Moore's Federal Practice ¶ 50.07[2] (2d ed. 1982). Thus in reviewing the denial of a judgment n.o.v., "this court must view the evidence and all reasonable inferences in the light most favorable to the party who obtained the jury verdict" and must reverse "only if no juror could reasonably reach a verdict for the opponent of the motion."

1. It was established at oral argument that this stick, or "underwater boomerang," was an in-

tegral part of the game of "Marine Boy."

*Marcel Hair Goods Corp. v. National Savings & Trust Co.,* 410 A.2d 1, 5 (D.C.1979). See *Rich v. District of Columbia, supra,* 410 A.2d at 532.

█ The crucial question here is whether appellant demonstrated that the District of Columbia, through the negligence of one of its teachers, breached the duty of care owed to DeShawn and that such breach was the proximate cause of DeShawn's injury. Under the law of negligence, the standard of care is defined as "reasonable care under the circumstances." *Morrison v. MacNamara,* 407 A.2d 555, 560 (D.C.1979). Within the context of a school playground situation this duty has been interpreted to mean the exercise of such care "as a parent of ordinary prudence would observe in comparable circumstances." *Ballard v. Polly,* 387 F.Supp. 895, 900 (D.D.C.1975). This duty, however, is restricted by the common law tort principle that limits liability to those injuries which are reasonably foreseeable results of one's action or inaction. The tortfeasor, generally not liable if the injury was proximately caused by the intervening act of a third party, is not relieved from liability, however, when the intervening acts were foreseeable. *Titus v. Lindberg,* 49 N.J. 66, 228 A.2d 65 (1967).

█ It is generally agreed that a school district is not the insurer of the complete safety of school children, nor is it strictly liable for any injuries which may occur to them. See *Benton v. School Board of Broward County,* 386 So.2d 831, 834 (Fla.App. 1980); *Lauricella v. Board of Education,* 52 A.D.2d 710, 381 N.Y.S.2d 566 (1976); Annot., 36 A.L.R.3d 330 (1971). Usually, whether one teacher overseeing a particular number of children in a playground is adequate supervision is a question of fact for the jury, *Benton v. School Board of Broward County, supra,* 386 So.2d at 835; *Cianci v. Board of Education,* 18 A.D.2d 930, 238 N.Y.S.2d 547 (1963); *Rodrigues v. San Jose Unified School District,* 157 Cal.App.2d 842, 322 P.2d 70 (1958), as is the issue of proximate cause. *Hanna v. Fletcher,* 97 U.S. App.D.C. 310, 314, 231 F.2d 469, 473, cert.

denied, 351 U.S. 989, 76 S.Ct. 1051, 100 L.Ed. 1501 (1956). Where, however, "it is clear that reasonable [persons] could draw but one conclusion from the facts alleged ... negligence and proximate cause become questions of law." *Hill v. McDonald,* 442 A.2d 133, 137 (D.C.1982). Here it has been shown that although the school approved plan required only one teacher to supervise the playground area, both Mrs. Williams and Mrs. Gales accompanied their respective classes during the recess period. While Mrs. Williams briefly absented herself to visit the restroom, Mrs. Gales remained on the playground watching the children. In order to effectively watch over her charges, Mrs. Gales turned around monitoring the front and rear portions of the play area. Frank Washington and DeShawn Cassidy were not playing in an area off limits to them. Thus the operative supervisory plan was being followed. On these facts, we are not convinced that appellant has demonstrated a breach of duty on the part of the District. See *Hammond v. Scott,* 268 S.C. 137, 232 S.E.2d 336, 338 (1977).

█ Even assuming, without deciding, that appellees have shown that the District breached a duty, they have failed to show that "a violation of the reasonable standard of care [was] the proximate cause of the injury sustained." *District of Columbia v. Cooper, supra,* 445 A.2d at 655.

We find the facts presented here closely analogous to those involved in *Fagan v. Summers,* 498 P.2d 1227 (Wyo.1972). In *Fagan,* a fellow student, during recess, threw a small rock which hit a larger rock on the ground and then bounced up and struck a child, causing him to lose the sight in his left eye. The court, finding that the injury was caused by the unforeseeable intervening act of a third person, said:

A teacher cannot anticipate the varied and unexpected acts which occur daily in and about the school premises. Where the time between an act of a student and injury to a fellow student is so short that the teacher has no opportunity to prevent

injury, it cannot be said that negligence of the teacher is a proximate cause of the injury. *Morris v. Ortiz,* 103 Ariz. 119, 437 P.2d 652, 655.

*Id.* at 1228–29. Similarly, in *Ohman v. Board of Education,* 300 N.Y. 306, 90 N.E.2d 474 (1949), a child sustained an eye injury when he was struck by a pencil thrown by a classmate when the teacher was temporarily out of the room. The court, finding that the teacher's absence was not the proximate cause of the injury, echoed the rationale articulated in *Fagan* and determined the act to be that "of an intervening third party which under the circumstances could hardly have been anticipated in the reasonable exercise of the teacher's legal duty toward the plaintiff." *Id.* 90 N.E.2d at 475. *See also Butler v. District of Columbia,* 135 U.S.App.D.C. 203, 417 F.2d 1150 (1969). And, again, in *Nash v. Rapides Parish School Board,* 188 So.2d 508 (La.1966), a child sustained severe eye injury when, while playing with a little girl, another girl struck him in the eye with a stick. While this accident occurred after school hours while the boy was waiting for the school bus, the operative legal principles are the same. The court found that, *inter alia,* plaintiff failed to show that there was any legal causal connection between the alleged inadequate supervision by the School Board and the injury.

> How could any teacher anticipate a situation where one child, while teasing another child, would be struck in the eye with a stick by a third child? Even if such action could have been anticipated, there is no showing of any likelihood whatsoever that such action could have been prevented by a teacher or supervisor even if [he or she] was standing right there. As is often the case, accidents such as this, involving school children at play, happen so quickly that unless there was direct supervision of every child (which we recognize as being impossible), the accident can be said to be almost impossible to prevent.

*Id.* at 510. *See also Batiste v. Iberia Parish School Board,* 401 So.2d 1224, 1228 (La.1981)

(lack of supervision on playground not proximate cause of injury sustained when fellow students hit child); *Woodsmall v. Mt. Diablo Unified School District,* 188 Cal. App.2d 262, 10 Cal.Rptr. 447, 450 (1961) (child's injury which occurred when he was pushed into basketball goal pole on playground by boy running behind him not proximately caused by a lack of reasonable supervision); *Ferreira v. Sanchez,* 79 N.M. 768, 449 P.2d 784 (1969) (student took a gun which was being used in a class play and was kept in a safe place, inserted a live bullet, fired the pistol at and injured plaintiff; harm was caused by intervening act of third person and not foreseeable).

We find that appellees failed to sustain their burden of establishing that, through the exercise of reasonable care under the circumstances, the act which caused the injury might have been anticipated or prevented. *Batiste v. Iberia Parish School Board, supra,* 401 So.2d at 1228; *Rodrigues v. San Jose Unified School District, supra,* 157 Cal.App.2d at 846, 322 P.2d at 73. The evidence adduced at trial showed merely that, due to the quickly occurring, unexpected conduct of a child, DeShawn was struck in the eye by a stick thrown by another student during a supervised play period; thus, the injury was the consequence of an unforeseeable, intervening act of a third party which could be neither anticipated nor prevented and for which the District cannot be held liable under the common law tort principles of negligence and proximate cause.

The nature of this court's considerations was stated recently in the case of *Benton v. School Board of Broward County, supra,* 386 So.2d at 835:

> [I]t seems appropriate to note that we are a society which has come to enjoy, indeed, to expect, virtual mass insurance coverage. Concepts like no-fault and expanding theories of strict liability easily explain the impulse to sustain the jury's verdict in this case. In fact, it might well be societally beneficial to encourage school boards to adopt insurance plans

which would permit recovery by injured students without regard to fault. Such action, however, is the prerogative of the legislature. Absent such legislation, courts must continue to abide by the traditional tort concepts of duty, breach, and injury proximately caused thereby.

Viewing the evidence in the light most favorable to appellees, we find that no reasonable juror could find a proximate connection between the teachers' conduct and the injury, and, therefore, the trial court erred in denying appellant's motion for a judgment n.o.v. Accordingly, we

*Reverse.*