471 So.2d 560 (1985)
Elizabeth Diane COLLINS, As Parent and Natural Guardian of Robert Earl Hammack, a Minor, and Elizabeth Diane Collins, Individually, Appellants,
v.
The SCHOOL BOARD OF BROWARD COUNTY, Florida, Appellee.
No. 84-1271.
District Court of Appeal of Florida, Fourth District.
May 15, 1985.
As Amended on Denial of Rehearing July 17, 1985.
*561 Melanie G. May of Bunnell, Denman & Woulfe, P.A., Fort Lauderdale, for appellants.
George W. Chesrow and Joan S. Buckley of Walton, Lantaff, Schroeder & Carson, Miami, for appellee.
HURLEY, Judge.
This appeal, involving an allegation of negligent supervision by a classroom teacher, stems from an incident during which the plaintiff/appellant was sexually assaulted by another male student. The jury returned a verdict in favor of the plaintiff, but the trial court granted defendant/School Board's motion for judgment in accordance with its prior motion for directed verdict, and entered judgment in favor of the School Board. We find error and reverse.
Robert Hammack was a student at Rogers Middle School in December of 1980. Part of his curriculum included a shop class. Hammack is emotionally handicapped and was mixed in with regular students as part of a federally-required "mainstreaming" effort which mandates such intermingling in certain vocationally-oriented classes.
The room where the shop class was held was approximately twice the size of a normal classroom. It contained numerous pieces of large machinery which the students normally used for various projects. Adjacent to the classroom were several smaller rooms; these included the teacher's office and a tool storage room, both located in front of the classroom, and a paint-finishing room and locker storage room in the rear of the classroom.
On December 12, 1980, the day of the incident, a substitute teacher was present due to the regular teacher's absence. This substitute had been placed in charge of other classes at the school in the past and was well-known to the administration and to many of the students. The substitute was not certified as a shop teacher and, consequently, did not allow the students to use the power machinery. Instead, he told the students to work on projects which could be completed with hand tools, or to work on homework from other classes. As a result, the noise level on the day of the *562 incident only slightly exceeded that of a normal study period.
Hammack entered the classroom that day and began to work on a Christmas project. At some point, he went to the paint room at the rear of the class to obtain paint for his project. While there, he was confronted by Robert Holloway and Tony Osborne, the two students principally responsible for the sexual assault which occurred shortly thereafter. Holloway and Osborne shut the lights off in the small room and began harassing Hammack. The substitute teacher noticed this, went back and chased the students out, and locked the paint room door.
Not long afterwards, Holloway and Osborne again approached Hammack. This time, according to Hammack, Holloway began striking him and threatened to beat Hammack up unless he performed oral sex on Holloway. It was then, with Osborne and other students acting as lockouts, that Hammack, standing at the rear of the class and at least partially hidden by a portable chalkboard, was forced to perform oral sex on Holloway. The testimony as to the duration of the incident conflicted, but the plaintiff said the entire encounter lasted ten minutes.
In addition to those students directly involved, other students also witnessed the assault. Paul Shields said he was standing near a workbench which was at approximately mid-point in the room, towards the far side, and noticed the commotion, at which point he moved closer to see what was happening. The testimony varied regarding the substitute teacher's whereabouts during the episode. One student, Beau Brittain, said the teacher was in front of the classroom the entire time. Another student, Paul Shields, said he was unsure, and that the substitute was either at his desk in front of the class or in his office which was located in a room off the front of the classroom. Holloway, the student who committed the assault, testified by deposition that the teacher was out of the classroom during the entire incident. The substitute teacher, however, said that he was "generally" by his desk or walking around by the tables. He further testified that he had no knowledge of the event and, in fact, did not learn of the incident until a later date.
Holloway's propensity to engage in sexually aggressive conduct was a topic of some discussion among the school's administration and students alike. There was testimony, from both male and female students, of repeated incidents in which Holloway would expose himself to other students during class. One student, Elizabeth Martin, said she informed the teacher after one such episode, but was told to "go sit down." She also informed one of the deans at the school, apparently with similar results. Her parents contacted one of the school's deans, and the principal as well, in an unsuccessful attempt to have Elizabeth transferred because they feared for Elizabeth's safety in the shop class.
Finally, members of the school's administration testified. The principal of Rogers Middle School, Patricia Grimes, testified by deposition and said she was aware that, prior to this incident, Holloway had been suspended at least twice for fondling and making sexually suggestive remarks to female students. She also testified she was aware that Holloway had been previously suspended for exposing himself to other students. One of the school's deans, Lincoln Anderson, testified and said he had personally suspended Holloway on one occasion because Holloway was exposing himself. He also said he was aware that an assistant principal at the school had actually witnessed an incident where Holloway exposed himself to a group of students.
The case went to the jury after a five-day trial. The School Board had moved for a directed verdict at the close of the plaintiff's case, and did so again at the conclusion of all the evidence. The trial court reserved ruling each time. The jury found in favor of Hammack but, in so doing, found him thirty-four percent comparatively *563 negligent.[1] The School Board then filed a consolidated document consisting of motions for (1) judgment in accordance with prior motions for directed verdict; (2) new trial; (3) remittitur or, in the alternative, for new trial, and (4) a motion to alter or amend judgment. The trial court granted the motion for judgment in accordance with the School Board's prior motion for directed verdict, and entered judgment accordingly. In its order granting that motion, the court noted that the remaining motions were moot and, therefore, it would not rule on them. Even so, the trial court opined that it believed the other motions had merit. The court also taxed costs against the plaintiff.

I

STANDARD OF REVIEW
When, after the entry of a jury verdict, the trial court grants a motion for judgment in accordance with the movant's prior motion for directed verdict, the ruling constitutes a deferred decision on the earlier motion for a directed verdict. Whitman v. Red Top Sedan Service, Inc., 218 So.2d 213 (Fla. 3d DCA 1969); Reams v. Vaughn, 435 So.2d 879 (Fla. 5th DCA 1983). Accordingly, our task in reviewing the propriety of an order granting such a motion is identical to that where an ordinary motion for directed verdict is involved. Presented with such a motion, the court must view all of the evidence in a light most favorable to the non-movant, and, in the face of evidence which is at odds or contradictory, all conflicts must be resolved in favor of the party against whom the motion has been made. Reams v. Vaughn, 435 So.2d 879 (Fla. 5th DCA 1983); Stenback v. Racing Associates, Inc., 394 So.2d 1128 (Fla. 4th DCA 1981). Similarly, every reasonable conclusion which may be drawn from the evidence must also be construed favorably to the non-movant. Reams; Stenback, supra. Only where there is no evidence upon which a jury could properly rely, in finding for the plaintiff, should a directed verdict be granted. Ligman v. Tardiff, 466 So.2d 1125 (Fla. 3d DCA 1985); Hernandez v. Motrico, Inc., 370 So.2d 836 (Fla. 3d DCA 1979). It goes without saying that a motion for directed verdict should be treated with special caution, and this is especially true in negligence cases where the function of a jury to weigh and evaluate the evidence is particularly important since reasonable people can draw various conclusions from the same evidence. Benton v. School Board of Broward County, 386 So.2d 831 (Fla. 4th DCA 1980); Hernandez v. Motrico, Inc., supra.

II

THE SCHOOL BOARD'S DUTY
To prevail on a theory of negligent supervision, a plaintiff must prove the basic elements of negligence. Thus, the plaintiff must establish (1) the existence of a teacher-student relationship between the parties giving rise to a legal duty on the part of the defendant-teacher to supervise the student; (2) the negligent breach of that duty; and (3) the proximate causation of the student's injury by the teacher's negligence. Ankers v. District School Board of Pasco County, 406 So.2d 72 (Fla. 2d DCA 1981).
Without question, the school was obligated to supervise Hammack and his classmates. Although a school board is not an insurer against a student being injured, the school board is entrusted with the care of the students and has a legal duty to properly supervise student activity. Rupp v. Bryant, 417 So.2d 658 (Fla. 1982); Benton v. School Board of Broward County, 386 So.2d 831 (Fla. 4th DCA 1980); Barrera v. Dade County, 366 So.2d 531 (Fla. 3d DCA 1979); see also Dailey v. Los Angeles Unified School District, 2 Cal.3d 741, 87 Cal. Rptr. 376, 470 P.2d 360 (1970).
We discussed the appropriate standard of care in Benton, supra, noting that:

*564 In those instances where lack or insufficiency of supervision is charged, the teacher's duty of care to the pupil is either described as reasonable, prudent, and ordinary care, or that care which a person of ordinary prudence, charged with the duties involved, would exercise under the same circumstances. Miller v. Griesel, 261 Ind. 604, 308 N.E.2d 701 (1974); Swartley v. Seattle School Dist. No. 1, 70 Wash.2d 17, 421 P.2d 1009 (1966); Connett v. Fremont County School Dist. No. 6, 581 P.2d 1097 (Wyo. 1978).
Benton, 386 So.2d at 834.
In Cirillo v. City of Milwaukee, 34 Wis.2d 705, 150 N.W.2d 460 (1967), which was cited with approval in Rupp v. Bryant, 417 So.2d 658 (Fla. 1982), the Wisconsin Supreme Court enumerated certain factors which may be helpful in determining a teacher's duty under a particular set of circumstances. Cirillo involved a teacher's absence from the classroom and there the court noted:
[T]he teacher's duty is to use "reasonable care." What this means must depend upon the circumstances under which the teacher absented himself from the room. Perhaps relevant considerations would be (1) the activity in which the students are engaged, (2) the instrumentalities with which they are working (band saws, dangerous chemicals), (3) the age and composition of the class, (4) the teacher's past experience with the class and its propensities, and (5) the reason for and duration of the teacher's absence.
Cirillo, 150 N.W.2d at 465.
In the case at bar, the sexual assault occurred while class was in session. Since the school had an absolute right to control the students' behavior at that time, the school also had a corresponding duty to protect and supervise them. See Rupp v. Bryant, 417 So.2d at 666-67. Moreover, it is reasonable to conclude that the school's duty to actively supervise the students here was even greater than would otherwise be imposed due to the unique combination of factors in this case, including but not limited to the oversized classroom; the presence of dangerous machinery; and the intermingling of regular and emotionally and mentally handicapped students. Thus, the teacher, and the School Board, clearly owed a duty to use reasonable care in supervising the shop class in which Hammack was sexually assaulted.

III

BREACH OF THE SCHOOL BOARD'S DUTY
The next question is whether there is competent evidence in the record to support the jury's finding that this duty was breached. As previously noted, all of the evidence, and every reasonable conclusion or inference therefrom, is to be resolved in favor of Hammack, the non-movant. All conflicts in the evidence are to be reconciled in a like manner. Reams v. Vaughn, 435 So.2d 879 (Fla. 5th DCA 1983); Stenback v. Racing Associates, Inc., 394 So.2d 1128 (Fla. 4th DCA 1981); Hernandez v. Motrico, Inc., 370 So.2d 836 (Fla. 3d DCA 1979).
The testimony regarding the duration of the assault and the exact whereabouts of the teacher is in conflict. Resolving these conflicts in favor of Hammack, as we are required to do, we hold that the jury was entitled to find that the assault lasted up to ten minutes and that the substitute teacher was absent from the classroom during all or a great part of this time.
Moreover, even if we were in a position to assume that the substitute teacher was, as some testimony suggested, at his desk in front during the assault, it is evident from his own testimony that he was not adequately supervising the class. The substitute teacher, at two separate times during his testimony, stated that he had a clear view from his desk to the back of the room. Implicit in this testimony is the suggestion that the front of the classroom provided an adequate vantage point to supervise all of the students. If this were true, the assault would not have gone *565 unobserved by the teacher. Furthermore, the adequacy of the teacher's supervision was also called into question by the testimony from at least one student that the substitute teacher, even when present, had no control over the class. Beau Brittain, a member of the shop class, testified that the environment of the shop class was "disruptive" and that the substitute teacher, had "no authority whatsoever in the class... ."
In summary, the record contains evidence, upon which a jury could properly rely, that the teacher not only failed to actively supervise the class, but failed to exercise any reasonable care, and thereby breached the duty owed Hammack.

IV

FORESEEABILITY OF THE HARM SUFFERED
Our next step, having concluded that the evidence could support a finding that the teacher owed a duty and that the duty was breached, is to determine whether the jury could find that the harm suffered by Hammack was proximately caused by the teacher's negligence. In our view, the evidence in this case does support a reasonable inference, available to the jury, that a causal relationship existed between the negligent supervision and the physical assault on Hammack by a fellow student.
A well-expressed definition of foreseeability appears in Goode v. Walt Disney World Co., 425 So.2d 1151 (Fla. 5th DCA 1982):
A foreseeable consequence is one which a prudent man would anticipate as likely to result from an act and are those that happen so frequently that they may be expected to happen again and are therefore probable consequences... . Although the actual harm that resulted may be seen as not foreseeable as a matter of law by the court, it is not necessary that the tortfeasor be able to foresee the exact nature and extent of the injuries in the precise manner in which they occurred; rather, all that is necessary is that the tortfeasor be able to foresee some injury likely to result in some manner as a consequence of his negligence.
Goode, 425 So.2d at 1155-56.
The Florida Supreme Court, in Rupp v. Bryant, 417 So.2d 658 (Fla. 1982), further elaborated on the question of foreseeability within the framework of an allegation of negligent supervision. In Rupp, the court acknowledged the existence of two schools of thought regarding the foreseeability of injuries in negligent school supervision cases. One line of cases, characterized by Ohman v. Board of Education, 300 N.Y. 306, 90 N.E.2d 474 (1949), takes the position that there can be proximate causation between a student's injuries and a teacher's absence only where the injury could have been prevented by the teacher's presence. See Ohman, supra; Morris v. Ortiz, 103 Ariz. 119, 437 P.2d 652 (1968); Segerman v. Jones, 256 Md. 109, 259 A.2d 794 (1969). This position was disapproved of by the court in Rupp. See Rupp v. Bryant, 417 So.2d at 668-69 n. 26.
The second and, we think, better-reasoned line of cases is exemplified by the California Supreme Court's en banc decision in Dailey v. Los Angeles Unified School District, 2 Cal.3d 741, 87 Cal. Rptr. 376, 470 P.2d 360 (1970). In Dailey, a sixteen-year-old high school student died from injuries sustained during a "slap boxing" fight which took place in the school gymnasium between class periods. The "slap fight" took place in front of a crowd of approximately thirty students and continued for five to ten minutes. The encounter ended when one of the participants fell backwards onto the pavement. He died that evening. Two gym instructors were in the area, but were engaged in other activities and, thus, were unaware of the students' fight. Nonetheless, the court held that the evidence was sufficient to support a finding that the failure to adequately supervise the students was the proximate cause of the victim's death.
As our supreme court noted, Dailey stands for the proposition that "certain student misbehavior is itself foreseeable and *566 therefore is not an intervening cause which will relieve principals or teachers from liability for failure to supervise... ." Rupp, 417 So.2d at 668. Further, the court stated that Dailey is more consistent with established principles of Florida negligence law:
We perceive that the Dailey standard more nearly comports with Florida negligence law which recognizes that the intervening negligence of a third party does not relieve the original tortfeasor of his negligence if the intervening negligence is foreseeable. See, Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980)... . A standard which recognizes that certain student misconduct will foreseeably occur when students are left unsupervised fulfills the definition in Gibson which finds an intervening cause foreseeable when "`in the field of human experience' the same type of result may be expected again." [Citation omitted.]
Rupp v. Bryant, 417 So.2d at 669. See also Leahy v. School Board of Hernando County, 450 So.2d 883 (Fla. 5th DCA 1984); Hoyem v. Manhatten Beach City School District, 22 Cal.3d 508, 150 Cal. Rptr. 1, 585 P.2d 851 (Cal. 1978); Loranger v. State, 448 So.2d 1036 (Fla. 4th DCA 1983).
Turning to the case at bar, we believe the major, conspicuous deficiency in the School Board's foreseeability argument is its meticulous specificity regarding just what is or is not foreseeable. In its brief, it argues that "the substitute teacher had no reason to anticipate or foresee that if Robert Holloway was not under constant supervision, he would force a male classmate to perform oral sex upon him." The problem with this formulation is that it simply is not necessary "that the tortfeasor be able to foresee the exact nature and extent of the injuries in the precise manner in which they occurred... ." Goode v. Walt Disney World Co., 425 So.2d 1151 (Fla. 5th DCA 1982). Thus, the exact factual circumstances of the incident need not have been foreseen, only the general type of harm. Here, the incident which gave rise to this suit can be characterized as a physical assault, arguably in the nature of a serious physical attack.
The cases are numerous where a student has been physically assaulted, Ferraro v. Board of Education of City of New York, 32 Misc.2d 563, 212 N.Y.S.2d 615, aff'd, 14 App.Div.2d 815, 221 N.Y.S.2d 279 (1961); Cirillo v. City of Milwaukee, 34 Wis.2d 705, 150 N.W.2d 460 (1967); violently attacked, Beck v. San Francisco Unified School District, 225 Cal. App.2d 503, 37 Cal. Rptr. 471 (1964); Silverman v. New York, 28 Misc.2d 20, 211 N.Y.S.2d 560, aff'd, 15 App.Div.2d 810, 225 N.Y.S.2d 77 (1962); or even killed, Dailey v. Los Angeles Unified School District, 2 Cal.3d 741, 87 Cal. Rptr. 376, 470 P.2d 360 (1970); Ziegler v. Santa Cruz City High School District, 168 Cal. App.2d 277, 335 P.2d 709 (1959); and in these cases the courts have had little difficulty in finding "that a failure to prevent injuries caused by the intentional or reckless conduct of the victim or a fellow student" may be the proximate cause of the injury itself. Dailey, 470 P.2d at 364.
Given the evidence in the case at bar, we believe the jury was entitled to find that the substitute teacher, as an employee of the School Board, failed to exercise reasonable care in performing his supervisory duty, and that his negligence was in fact the proximate cause of the injuries suffered by Hammack. Consequently, we hold that the trial court erred in granting the School Board's motion for a directed verdict.
As noted earlier, the trial court declined to rule on the School Board's other motions, believing them to be moot. The School Board now contends, and we agree, that the case should be remanded to allow the lower court to rule on the remaining motions. See Van Dusen v. Dobson, 457 So.2d 1062 (Fla. 2d DCA 1984); Navarro v. City of Miami, 402 So.2d 438 (Fla. 3d DCA 1981).
Accordingly, we reverse the trial court's order granting the School Board's motion for directed verdict, and instruct the court to reinstate the jury's verdict. Upon remand, the trial court may rule on the School Board's remaining motions.
*567 REVERSED AND REMANDED WITH INSTRUCTIONS.
WALDEN and BARKETT, JJ., concur.
NOTES
[1] Apparently the jury concluded that the plaintiff was negligent in failing to call out for help. The propriety of this finding has not been contested by cross appeal.