905 So.2d 203 (2005)
MIAMI-DADE COUNTY SCHOOL BOARD, Appellant,
v.
A.N., SR., and J.N., individually, and J.N., as next friend and mother of A.N., Jr., a minor, Appellees.
No. 3D03-2874.
District Court of Appeal of Florida, Third District.
April 13, 2005.
Rehearing and Rehearing Denied July 13, 2005.
John R.W. Parsons and Jeanne Heyward, Miami, for appellant.
Keith Chasin, P.A., and Philip D. Parrish, Miami, for appellees.
Before COPE and GERSTEN, JJ., and DELL, John W., Senior Judge.
Rehearing and Rehearing En Banc Denied July 13, 2005.
PER CURIAM.
This appeal arises out of a final judgment entered pursuant to a jury verdict in favor of appellees on their claim for damages against the Miami-Dade School Board (School Board). We affirm.
The parents of a kindergartener (appellees) brought an action in negligence, individually and on behalf of their child, against the School Board after their son *204 was sexually assaulted by another kindergarten student. The sexual assault occurred in a bathroom in his kindergarten class at Sweetwater Elementary. Appellees claimed negligence based on the School Board's failure to warn their child's substitute teacher of the other child's developmental and sexually aggressive behavior; its failure to inform the substitute teacher of the school's bathroom pass procedure, which was used by the teachers to limit the use of the bathroom to one child at a time; and its failure to take reasonable precautions to prevent a child with a history of sexually aggressive behavior from being alone in the bathroom with their son. The jury found the School Board negligent and awarded appellees past and future damages.
The School Board contends that the trial court should have entered a judgment in its favor because appellees failed, as a matter of law, to establish that it was negligent; the trial court erred when it failed to give the School Board's requested special instructions on the standard of care it owed a student; and the trial court erred when it instructed the jury on mortality tables because the record does not contain evidence of a permanent injury. For reasons which we will discuss, we hold that the School Board was not entitled to a judgment as a matter of law, the trial court did not err when it refused to give the special jury instructions requested by the School Board, and that it did not err when it admitted the mortality tables and instructed the jury on them.
We are not persuaded by the School Board's argument that this case should not have reached the jury because it was not negligent as a matter of law. In making this argument, the School Board relies primarily upon Benton v. School Bd. of Broward County, 386 So.2d 831 (Fla. 4th DCA 1980), and Rodriguez v. Discovery Years, Inc., 745 So.2d 1148 (Fla. 3d DCA 1999), in which this court adopted the reasoning in Benton. Both Benton and Rodriguez are negligent supervision cases involving situations where a student, while briefly out of the sight of the teacher, was injured as a result of their finger getting caught in a bathroom door. The evidence established only that the injuries were immediate, instantaneous events. Benton, 386 So.2d at 834; Rodriguez, 745 So.2d at 1148.
In Benton, the court affirmed an order setting aside a verdict against the School Board of Broward County because there was no evidence of a breach of duty. The Benton court concluded that the plaintiffs had failed to prove their allegations that the defendant had negligently breached its standard of care because the plaintiffs' teacher allowed the "tug of war" activities that allegedly led to the plaintiff's injuries to continue in the classroom. The court said "the charge that a `tug-of-war' took place ... was not borne out by the evidence." Benton, 386 So.2d at 833. "All of the evidence from the participants and the on-the-scene witnesses indicates that this was an immediate, instantaneous event to which the teacher responded at the moment she heard [the injured student] cry out." Id. at 834. The court noted the split second nature of the incident, and stated that "teachers and school boards are neither insurers of the students' safety, nor are they strictly liable for any injuries which may occur to them." Id. The court also pointed out that
[t]eachers and school boards do, however, have an obligation to supervise the activity of students when the school is entrusted with their care.... In those instances where lack or insufficiency of supervision is charged, the teacher's duty of care to the pupil is either described as reasonable, prudent, and ordinary *205 care, or as that care which a person of ordinary prudence, charged with the duties involved, would exercise under the same circumstances.... Whether a teacher has breached [that duty] by failing to provide adequate supervision is usually a question of fact for the jury.
Id. at 834-35.
Unlike Benton and Rodriguez, the record in this case contains evidence that the School Board breached its duty of care. Appellees presented evidence that the School Board failed to give sufficient warning to the substitute teacher that the student had a history of developmental problems and sexually aggressive behavior and that the instruction given the substitute teacher did not adequately put her on notice that she needed to exercise extra care to properly supervise the troubled child. The evidence also shows that the substitute teacher was not instructed on the bathroom pass procedures that were used to restrict more than one student at a time from occupying the bathroom. We conclude that the record contains sufficient evidence to support the jury's verdict finding the School Board negligent. We also conclude that the trial court properly instructed the jury on liability and did not err when it denied the School Board's requested special jury instructions. We therefore affirm the trial court's entry of a judgment of liability in favor of appellees.
We also disagree with the School Board's argument that there was no evidence of permanent injury, and, as a result, the trial court erred when it allowed the introduction of the mortality tables into evidence and instructed the jury on them.
"It is well-settled that mortality tables are not admissible in the absence of evidence of permanent injury...." Seaboard Air Line R.R. v. Ford, 92 So.2d 160, 163 (Fla.1955). In Westbrook v. Bacskai, 103 So.2d 241 (Fla. 3d DCA 1958), this Court stated that
[t]he burden is upon the plaintiff, claiming permanent injury, to offer evidence sufficient to raise a reasonable probability that permanent injury exists as a proximate result of the accident which is the subject of the action before the court.
Id. at 242 (citations omitted) (emphasis added). See also State Farm Mut. Auto. Ins. Co. v. Orr, 660 So.2d 1061 (Fla. 4th DCA 1995).
The treating psychologist testified that the child has post traumatic stress syndrome and that it was caused by the sexual assault. The psychologist also testified that the child's psychological problem "might have to be revisited ...", "it's something that can be reactivated", "... there will be times in his life where it may be an issue for him," and "based on psychological probability ... it most probably will come up again." The fact that the psychologist did not use the term "permanent problem" in describing the child's psychological condition[1] does not support *206 the School Board's argument that appellees did not present any evidence that the child was permanently injured. In Sullivan v. Price, 386 So.2d 241, 243 (Fla.1980), the supreme court held that the evidence of permanent injury was sufficient to warrant admission of the mortality tables, and stated that "[i]t was not the trial court's duty to determine the weight or sufficiency of the evidence bearing on the continuing or permanent nature of the injuries since the credibility of the testimony and the weight of the evidence was for the jury to decide."
The record contains evidence that the child has sustained a psychological injury that "most probably" will affect him at various stages throughout his lifetime, and that "it is likely" that he will need future psychological treatment.[2] We hold that the substance of the psychologist's testimony when considered in its entirety meets the threshold of "reasonable probability" and that the trial court correctly admitted into evidence and instructed the jury on the mortality tables. See Westbrook, 103 So.2d at 241; White v. Westlund, 624 So.2d 1148 (Fla. 4th DCA 1993), review dismissed, 640 So.2d 1109 (Fla. 1994); Vitt v. Ryder Truck Rentals, Inc., 340 So.2d 962 (Fla. 3d DCA 1976). See also Corbett v. Dade County Bd. of Pub. Instruction, 372 So.2d 971, 973 n. 2 (Fla. 3d DCA 1979) (noting that this court has held that "testimony of the continuing effects of an injury is sufficient to justify an instruction on [p]ermanent damages"), cert. denied, 383 So.2d 1192 (Fla.1980); William Penn Hotel, Inc. v. Cohen, 101 So.2d 404 (Fla. 3d DCA 1958). See generally Hall v. Norfolk Southern Ry. Co., 829 F.Supp. 1571, 1583 (D.C.N.D.Ga.1993).
Accordingly, we affirm the judgment.
AFFIRMED.
GERSTEN, J., concurs.
COPE, J. (concurring in part and dissenting in part).
The testimony quoted in footnote one does not establish the existence of a permanent psychological injury. There was *207 no permanent physical injury. The mortality tables should not have been admitted into evidence.
I concur in the remainder of the majority opinion.
NOTES
[1] On direct examination, the psychologist testified:

Q. And based on reasonable degree of psychological probability, is it more likely than not that this is a permanent problem?
A. I would be unable to say that.
Q. Will he ever get over it, Doctor?
A. I think there will be times in his life where it may be an issue for him. When he becomes prepubescent or when an adolescent when he [has] concerns about sexuality, sexual identity, sexual relationships and in his adult life.
Q. In other words, [are] there courses or periods of time where you as a psychologist recognize these issues
A. Where it would be more likely for him to revisit the issue so to speak.
Q. More likely based on psychological probability?
A. Yes.
* * *
Q. My question is, as we talk about developmental milestones in the boy's life, there would be a point in puberty, there would be a point when he has feelings of sexuality ..., does he need to deal with this incident or will this incident recur to him based on psychological probability?
A. It most probably will come up again.
Q. And how does this likely affect these types of patients?
A. I think it's important for them at that point to be able to talk about it and to have further treatment.
Q. Psychological treatment further?
A. Yes
Q. So you feel in the future he definitely will need to deal with this and see a psychologist even way after this case is over?
A. Depending on what his responses are. But, you know, it is likely.
On cross examination, defendant's counsel asked the psychologist:
Q. Did I understand you to say to [plaintiff's counsel] that you cannot say that A.N. has a permanent problem as a result of this incident?
A. I did not say that. I said it might have to be revisited at different development stages in his life.
Q. So do you consider that to be permanent?
A. I don't know what I would call that. I wouldn't call it permanent as occurring all the time, but I think it's something that can be reactivated.
[2] The psychologist's use of the term "likely" does not render her opinion speculative. See Black's Law Dictionary 925 (6th ed. 1991)(defining "likely": "Probable. In all probability. Likely is word of general usage and common understanding, broadly defined as of such nature or so circumstantial as to make something probable and having better chance of occurring than not.")(citations omitted).