# Third District Court of Appeal

## State of Florida

Opinion filed April 8, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-1394
Lower Tribunal No. 11-28359
_____

**The School Board of Miami-Dade County, Florida,**
Appellant,

vs.

**Nelly Martinez-Oller, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Weiss Serota Helfman Pastoriza Cole & Boniske and Edward G. Guedes; Walter J. Harvey, School Board Attorney, and Heather L. Ward, Assistant School Board Attorney, for appellant.

Keith Chasin, for appellee.

Before SHEPHERD, C.J., and WELLS and SCALES, JJ.

SHEPHERD, C.J.

The School Board of Miami-Dade County appeals from a final judgment entered upon a jury verdict in a negligent supervision action, arising out of a classroom incident at Miami Killian High School, where Ericka Barbieri, a student attending Killian, spontaneously pitched an eight pound textbook at classmate, Joel Del Rosario, after Joel called Ericka a b----. The book fractured Joel's eye socket. Although the classroom teacher, Elizabeth Moon-Brumley, was standing in front of the class about two and one-half feet from Ericka and Joel at the moment the incident transpired, she was helpless to prevent Ericka's reprisal. In fact, all parties agree that the teacher did nothing wrong. Instead, the plaintiffs asserted as their theory of the case throughout trial that the school principal, and hence the School Board, was negligent for not disseminating Ericka's prior disciplinary record to the teacher. For the following reasons, we find the school principal had no duty to disseminate Ericka's disciplinary record.

**FACTUAL AND PROCEDURAL BACKGROUND**

The incident in this case occurred on March 22, 2010, during Ms. Moon-Brumley's world history class. There were about thirty-five students in the class that day. Joel was seated in the front row of the classroom; Ericka was seated behind Joel and one seat to the left. At the time of the incident, the students were "working collaboratively" on a writing assignment and were supposed to talk to

each other (albeit obviously not on such personal terms).  The classroom chatter blocked Ms. Moon-Brumley's ability to hear the epithet.  After the incident, Ms. Moon-Brumley immediately escorted both students to the principal's office.

On September 7, 2011, Joel Del Rosario, through his mother and next friend, Nelly Martinez-Oller,[1] commenced the instant action.  The factual underpinnings of the claim against the School Board presented at trial consisted of only two pre-incident disciplinary reports involving Ericka.  On December 17, 2009, at Erika's prior school, a lunchtime altercation with another female student took place, during which Erika yelled at the student and pulled on her shirt tail but did not physically injure the student.  Erika received a one-day suspension from school for this incident.  The other incident occurred on March 15, 2010, one week before the incident which spawned the present action, in which Erika disregarded a bus driver's instruction to stop kissing her boyfriend on the bus to school, drawing Erika a two-day suspension.

Students in the Miami-Dade Public Schools have a federally protected right of privacy in their educational records (including student disciplinary records) under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. §1232g (2012).  See School Board of Miami-Dade County Bylaws and Policies §

---

[1]By the time the case was tried, Joel Del Rosario was no longer a minor.  During trial, the parties treated Joel as a party, and he was awarded damages independent of his mother.  Ericka settled the claims made against her before trial.

8330 – Student Records.[2]  FERPA prohibits the release of such educational records by the School Board without the consent of the student, except to "school officials, including teachers within the educational institution or local educational agency, **who have been determined by such agency or institution to have legitimate educational interests**."  20 U.S.C. §1232g(b)(1)(A) (2012) (emphasis added).  In compliance with School Board policy and federal law, the disciplinary records at issue in this case were maintained in the office of the principal of Miami Killian High School, and were accessible only by the school's principal and vice principal.  See Fla. Admin. Code Ann. R. 6A-1.0955 (2010).  Neither the school principal, vice principal, nor any other School Board representative or teacher initiated a "legitimate educational interests" determination under this law at any time prior to the day of the incident.  Nevertheless, the trial court granted a directed verdict in favor of the plaintiffs at the close of all the evidence, holding that "the defendant school board had a legal duty to make [the disciplinary reports] available to Ms. Moon-Brumley."  The jury was so instructed, and further advised that the only remaining "issue you must decide on Joel Del Rosario's claim against the School Board is whether [his] injury was proximately caused by . . . the school board's violation of its duty."  The trial court reversibly erred by directing a verdict on the issue of duty.

---

[2] The protections of FERPA are also provided to students and their parents under state law.  See § 1002.22, Fla. Stat. (2012).

4

## ANALYSIS

The recognition of the existence of a legal duty is a question of law for the court, not a determination for the jury. McCain v. Florida Power Corp., 593 So. 2d 500, 502 (Fla. 1992). The trial court reached its conclusion that the School Board had a duty to release Ericka's past behavioral records to Ms. Moon-Brumley by itself determining that Ms. Moon-Brumley "had a legitimate educational interest in [Ericka's] past behavior records." This is legal tail chasing. FERPA unambiguously and exclusively entrusts the determination of "legitimate educational interests" with educational agencies, see 20 U.S.C. §1232g(b)(1)(A), and as the trial court itself fleetingly recognized, a "legitimate educational interest determination is an agency, not court, determination."

The case plaintiffs wished they had, but did not, was a straight-forward negligent supervision claim. To prevail on a theory of negligent supervision, a plaintiff must prove (1) the existence of a teacher-student relationship giving rise to a legal duty to supervise the student; (2) negligent breach of that duty; and (3) proximate causation of the student's injury by the teacher's negligence. Roberson v. Duval County School Bd., 618 So. 2d 360, 362 (Fla. 1st DCA 1993); Collins v. School Bd. of Broward County, 471 So. 2d 560, 563 (Fla. 4th DCA 1985); Ankers v. District School Bd. of Pasco County, 406 So. 2d 72 (Fla. 2d DCA 1981). In this case, there is no question but that there was a student-teacher relationship between

5

Joel Del Rosario and Ms. Moon-Brumley at the moment Ericka threw the book at Joel. However, events transpired so quickly that Ms. Moon-Brumley did not have the opportunity to intervene. As the parties all agree, Ms. Moon-Brumley did nothing wrong. Thus, there was no breach of duty by Ms. Moon-Brumley and hence no liability on the School Board for Ericka's youthful insouciance on that score. See Aguila v. Hilton, Inc., 878 So. 2d 392, 396 (Fla. 1st DCA 2004) (finding mere foreseeability of the harm in question does not create a duty of care; the defendant's conduct must actually "create" the risk that caused harm to the plaintiff and **"there must also be some evidence that the risk was created by the alleged negligence of the defendant."**) (emphasis added).

To support the imposition of a duty of care in this case, Joel places primary reliance on Miami-Dade County School Board v. A.N., Sr., 905 So. 2d 203 (Fla. 3d DCA 2005). However, A.N., Sr. is readily distinguishable from the case before us. There, a kindergarten student, who had previously exhibited "developmental and sexually aggressive behavior," sexually assaulted another kindergarten student in the bathroom while under the supervision of a substitute teacher. Id. at 204. This court found the School Board had a duty to inform the substitute teacher of the school's bathroom pass procedures, which limited bathroom use to one student at a time, and a duty to inform the substitute of the previous sexually aggressive

6

behaviors and developmental problems of the offending student. Id. at 205. A.N., Sr. is a case of ordinary negligence.

The case before us is legally and factually different. Our case does not involve a history of sexual assault or other behavior problems. Nor does it involve the failure of the school board to inform a teacher supervising students of a significant standard operating procedure at the school. Rather, it involves an immediate instantaneous event in which the teacher did not have the opportunity to intervene. Our case is more similar, factually and legally, to the two cases cited by the School Board in A.N., Sr., albeit unsuccessfully in support of its position there, but which are instructive and controlling here. See Benton v. School Bd. of Broward County, 386 So. 2d 831 (Fla. 4th DCA 1980) and Rodriguez v. Discovery Years, Inc., 745 So. 2d 1148 (Fla. 3d DCA 1999).

In Benton v. School Board of Broward County, the accident occurred at the Broward Estates Elementary School where two classrooms were attached by a common hallway. Off the hallway was a door to the girls' bathroom and a door to the boys' bathroom. Since the facilities were accessible to students from both classrooms, the school promulgated rules regulating their use. Students had to raise their hand and obtain permission before leaving the classroom. As in A.N., Sr., only one child at a time was allowed to leave the classroom and students were instructed that if the restroom door was closed, they were to knock on the door

7

before entering to determine whether the room was occupied. On the day of the accident, Sheri Benton, a kindergartener, obtained permission to leave the classroom and found the bathroom door closed. When she knocked on the door, a child from the next classroom, who was "sitting on the stool" in the bathroom, pushed the door open and then, while trying to close it, caught Sheri Benton's finger in the door jam, severing her left index finger. The teacher, who was in the classroom with the other students, responded as soon as she heard the cry. Apparently, the jury believed it was within its province to find that the teacher had an affirmative duty to leave the classroom and accompany the child to the bathroom door. The trial court granted the School Board's motion for judgment notwithstanding the verdict, and the district court of appeal affirmed. The court observed, "Not only would this be impractical and unrealistic, but it would impose a duty not founded in law." Benton, 386 So. 2d at 834.

In Rodriguez v. Discovery Years, Inc., this court was faced with a factual scenario similar to that found in Benton. Lesliet, a very young student at Discovery Years School, was playing with a "Nerf" ball. As she went to retrieve the ball, she grabbed at a bathroom door jamb to keep herself from falling. At precisely that moment, another student, who had just entered the bathroom, was closing the door. Lesliet's finger was trapped, cutting off its tip. The teacher was busy in the classroom helping other students with their work and did not observe

8

the incident. Relying upon <u>Benton</u>, we affirmed a final summary judgment in favor of the school.

As in <u>Benton</u> and <u>Rodriguez</u>, there is no evidence of negligent supervision in this case. Ms. Moon-Brumley was standing in front of her class carrying out her teaching duties when Ericka launched her missile. The act was a random act of violence, which Ms. Moon-Brumley could not have anticipated even if she knew from Ericka's extraneous disciplinary record that Ericka had pulled on a student's shirt tail eighteen months earlier or failed to observe school bus decorum. The incident might have happened anywhere.

Applying the logic of the trial court, the school principal would have had to disseminate Ericka's disciplinary reports to all of her classroom teachers – perhaps even to all of the teachers and employees in the school who might attain some degree of supervisory authority over Ericka during a school day or a school month – on the chance that she might again misbehave at some future time and on some future day within the premises of the high school. This rationale is antithetical to the raison d'etre for the federal and state student privacy laws, which exist to protect a student's right to privacy from the unauthorized access of third parties, See <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 295 (2002); <u>U.S. v. Miami University</u>, 91 F. Supp. 2d 1132, 1140 (S.D. Ohio 2000), and concomitantly serves to deter the interjection of extraneous factors into a teacher's evaluation and

9

treatment of students in the classroom. The school's legal duty in this case was to properly supervise student activity on school grounds, not to disseminate disciplinary reports. The trial court erred and encroached on the power of the School Board, a constitutionally created political subdivision of the State, by finding that the Miami-Dade School District had a legal duty to provide the protected disciplinary reports to Ms. Moon-Brumley in this case.

Reversed and remanded for entry of judgment in favor of the School Board.