928 So.2d 1246 (2006)
Thomas A. CLARE, Petitioner,
v.
COLEMAN (PARENT) HOLDINGS, INC., and Morgan Stanley & Company, Inc., Respondents.
No. 4D05-1575.
District Court of Appeal of Florida, Fourth District.
May 24, 2006.
*1247 Marie A. Borland and Benjamin H. Hill, III, of Hill, Ward & Henderson, P.A., Tampa, and John A. DeVault, III, of Bedell, Dittmar, DeVault, Pillans & Coxe, P.A., Jacksonville, for petitioner.
Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, Joel D. Eaton of Podhurst Orseck, P.A., Miami, and Jerold S. Solovy, Ronald L. Marmer, Paul M. Smith and Jeffrey T. Shaw of Jenner & Block, LLP, Chicago, IL, for respondent Coleman (Parent) Holdings, Inc.
MAY, J.
An out-of-state attorney filed a petition for writ of certiorari asking this court to review an order revoking his pro hac vice admission status. He argues the trial court departed from the essential requirements of the law in revoking his status without notice and an opportunity to be heard. He argues he has suffered irreparable injury and has no adequate remedy at law. We agree and grant the petition.
The petitioner is a partner in the law firm of Kirkland & Ellis, LLP, and is admitted to practice in other jurisdictions, but is not a member of the Florida Bar. The trial court admitted him to appear pro hac vice on behalf of Morgan Stanley & Company in a suit brought by Coleman Holdings, Inc. In that capacity, the petitioner served as the primary intermediary between Morgan Stanley and Coleman on discovery matters.
During the litigation, a discovery dispute arose from Coleman's request for production of all documents, including electronic items, connected with Morgan Stanley's work for Sunbeam Corporation, which served as the basis for the underlying lawsuit. After Coleman had filed a second motion to compel, but before the hearing on the motion, Morgan Stanley and Coleman reached an agreement that was reduced to an agreed order. The agreed order required Morgan Stanley to conduct electronic searches of back-up tapes for employees who had worked on the Sunbeam transaction, to produce all non-privileged e-mails by a certain date, to provide a privilege log for those redacted documents not produced, and to provide a certificate of compliance with the agreed order by a certain date. Morgan Stanley provided approximately 1300 pages of e-mails and a certificate of compliance.
Nearly five months later, the petitioner advised Coleman of additional back-up tapes that had been located. He represented that the tapes had not been properly stored, were not clearly labeled, were differing in format, and that additional time was needed to fully comply with the agreed order. Coleman then filed motions seeking an adverse inference instruction due to the destruction of e-mails and non-compliance with the agreed order. These motions did not claim misconduct on the part of the petitioner or his law firm and did not seek revocation of petitioner's pro hac vice status.
The trial court conducted an evidentiary hearing on the motions. The petitioner testified that he first became aware of the additional tapes just prior to his notification *1248 to Coleman of their existence. The petitioner denied knowledge of the falsity of the certificate of compliance when it was filed despite vigorous cross-examination on that issue. At the end of the hearing, counsel for Coleman suggested the court consider the sanction of revoking the pro hac vice status of Morgan Stanley's out-of-state lawyers. When the court entered an Amended Order on Coleman's motion for an adverse inference instruction, it noted Morgan Stanley and its counsel's failure to give Coleman and the court any indication that the certificate of compliance had been false. However, the order did not indicate the court's inclination to revoke the pro hac vice status of the out-of-state lawyers.
Coleman then filed a motion for entry of default judgment based upon a "pattern of abusive conduct aimed at obstructing justice." In the motion, Coleman accused Morgan Stanley of attempting to cover up an SEC investigation into e-mail policy violations, refusing to comply with the court order to produce documents, and other intentional misconduct. The motion mentioned the petitioner only as one of several persons heavily involved in the e-mail production. At the hearing on the motion, the court requested a "list of all the pro hoc [sic] vice admission on behalf of Morgan Stanley." The petitioner was not present at this hearing.
The court then issued an order granting the entry of default judgment against Morgan Stanley. In a one line paragraph of an eighteen-page order, the court revoked the petitioner's pro hac vice admission without further explanation. On the same day the court entered the order, the court also heard Kirkland and Ellis's motion to withdraw. During that hearing, the court commented that there was "nothing in this record that indicates that any misconduct on the part of Kirkland and Ellis was anything other than as a consequence of their serving as messengers. . . ."
The petitioner argues his due process rights were violated when the trial court revoked his pro hac vice status without notice and an opportunity to be heard. He also suggests that remand for proper notice and a hearing is unnecessary because a final judgment in the amount of $1.45 billion has since been entered against Morgan Stanley and his law firm has withdrawn as counsel of record. He seeks merely to remove any stigma associated with the revocation of his pro hac vice status.
Certiorari is the proper remedy for reviewing orders revoking an attorney's pro hac vice status. See Ford Motor Co. v. Smith, 821 So.2d 1084 (Fla. 3d DCA 2000). For the writ to issue, the petitioner must demonstrate that the trial court departed "from the essential requirements of law causing material harm for which there is no adequate remedy on final appeal." Katz v. N.M.E. Hosps., Inc., 842 So.2d 853, 854 (Fla. 4th DCA 2002).
Taking the prerequisites for the issuance of the writ in reverse order, the petitioner clearly satisfies the inadequate remedy at law. Neither he nor his law firm is currently involved in the litigation and he is not otherwise a party. This leaves him with no remedy on the final appeal of the underlying litigation. The more difficult issue is whether the trial court deviated from the essential requirements of the law in revoking the petitioner's pro hac vice status.
Florida law allows for the revocation of an attorney's pro hac vice status when the misconduct "adversely impacts the administration of justice." State Indus., Inc. v. Jernigan, 751 So.2d 680, 682 (Fla. 5th DCA 2000). But, an attorney cannot be disqualified without notice and an opportunity to be heard. Kleiner v. *1249 First Nat'l Bank of Atlanta, 751 F.2d 1193, 1211 (11th Cir.1985). Florida has consistently required notice and an opportunity to be heard before sanctions are imposed upon counsel. See Moakley v. Smallwood, 826 So.2d 221, 227 (Fla.2002).
Here, Coleman did not allege misconduct on the part of the petitioner and did not seek revocation of his status in the motion seeking a default against the petitioner's client Morgan Stanley. The idea first arose in a verbal request by Coleman's counsel at the end of the hearing on the motion for an adverse inference. The order resulting from that hearing did not revoke the petitioner's pro hac vice status.
The petitioner did not have notice and was not given an opportunity to be heard concerning the revocation of his pro hac vice status. While the record is replete with allegations of misconduct on behalf of his client, no such allegations were directed toward him. In fact, the trial court repeatedly indicated that counsel was simply the messenger. There was no suggestion, let alone any finding, of misconduct on the part of counsel. Indeed, the order revoking the petitioner's status fails to contain any finding of misconduct on the part of the petitioner giving rise to the sanction. We therefore find the trial court's order deviated from the essential requirements of the law.
The petitioner next argues that the revocation of his pro hac vice status has caused him irreparable harm by damaging his professional reputation and his ability to practice law in Florida and other jurisdictions. See Kirkland v. Nat'l Mortgage Network, Inc., 884 F.2d 1367 (11th Cir. 1989). We agree.
Florida's rule on pro hac vice admissions provides that "[n]on-Florida lawyers who have been disciplined or held in contempt by reason of misconduct committed while engaged in representation that is permitted by this rule shall thereafter be denied admission under this rule and the applicable provisions of the Florida Rules of Judicial Administration." R. Regulating Fla. Bar 1-3.10(a)(3). See also Fla. R. Jud. Admin. 2.061. As the petitioner litigates throughout the United States, the revocation of his pro hac vice status will have an adverse impact on his ability to seek that status in this and other jurisdictions. The petitioner has sustained the requisite injury to warrant the granting of a petition for writ of certiorari.
The last question to be answered is whether the remedy requires further evidentiary hearing in the trial court. We can see no value in remanding this case to the trial court. The petitioner is no longer counsel of record, the underlying litigation is currently pending appeal in this court, and Coleman neither requested the sanction in writing nor introduced evidence of misconduct on the part of the petitioner at the evidentiary hearing. We therefore grant the petition, issue the writ, and direct the trial court to strike the revocation of the petitioner's pro hac vice status from its order of March 23, 2005.
Petition Granted.
KLEIN and TAYLOR, JJ., concur.