979 So.2d 435 (2008)
Jon Schuyler BROOKS, Attorney and Counselor-at-law, Karin Bronner, Monica Bronner Kranepool, Peter Bronner, and Robert Bronner, Petitioners,
v.
AMP SERVICES LIMITED, Trustee for the Walter and Anna Bronner Trust, Thomas Myers, as Personal Representative of the Estates of Walter Bronner Patrias and Anna Bronner, deceased, The Walanpatrias Foundation, Gislhaine Whyte, Mario Simmen, Paul Marie Jacques, Elizabeth Schwartz, and Mombach, Boyle & Hardin, P.A., Respondents.
No. 4D07-3801.
District Court of Appeal of Florida, Fourth District.
April 23, 2008.
*436 Jon Schuyler Brooks of Phillips Nizer LLP, New York, NY, pro se, and Alan J. Fisher, Boca Raton, for petitioners the Bronner family.
Michael P. Hamaway of Mombach, Boyle & Hardin, P.A., Fort Lauderdale, for respondents.

ON MOTION FOR CLARIFICATION
PER CURIAM.
We grant the motion for clarification filed by respondent Mombach, Boyle & Hardin, P.A., withdraw our prior opinion dated February 13, 2008, and substitute the following in its place.
Jon Schuyler Brooks (Brooks), a New York attorney representing himself, and petitioners Karin Bronner, Monica Bronner Kranepool, Peter Bronner, and Robert Bronner (collectively, the Bronners), represented in this court by other counsel, seek certiorari review of a Broward County circuit court order dated August 29, 2007, vacating its prior order admitting Brooks pro hac vice. We grant the petition.
The law firm of Mombach, Boyle & Hardin, P.A. (MB & H) formerly represented the Bronners in the underlying litigation; thereafter, the Bronners retained Brooks and his firm, Phillips Nizer LLP, in connection with related matters. Brooks is admitted to all the courts in the state of New York and to various federal courts across the country, but is not a member of The Florida Bar.
In the underlying litigation, MB & H moved to determine the amount of and to enforce a charging lien against the Bronners, and a hearing was set for July 11, 2007. On July 10, Brooks served his verified motion for admission to appear pro hac vice, pursuant to Florida Rule of Judicial Administration 2.510, which included a statement that he was an active member in good standing and currently eligible to practice law in a number of jurisdictions, including the state of New York. At the July 11 hearing, the trial court accepted Brooks' application and set an evidentiary hearing on MB & H's motion.
Thereafter, a hearing on other related motions was set for August 29, 2007. However, on August 28, by letter, MB & H brought to the court's attention that, at the time Brooks moved to be admitted pro hac vice, he actually was not in good standing *437 as a member of the New York State bar; the firm had obtained a form, completed on July 25, 2007, by the clerk of the New York Supreme Court, Appellate Division, Second Department, which indicated that Brooks' registration fee, which was due March 2007, had not been paid.
On receipt of this letter, Brooks immediately contacted the New York State Office of Court Administration (OCA) about his registration status and learned that office had not received or processed his registration renewal dated March 7, 2007. He rectified the matter immediately and on August 29, the deputy clerk of the New York Supreme Court's appellate division sent a letter verifying that Brooks was in good standing as an attorney and that there was no record of any public censure, suspension, or disbarment in that court.
At the August 29 hearing, MB & H pointed out that, at the time of Brook's pro hac vice application, his registration fee had not been paid; Brooks conceded that it was not, but he had no reason to know that; he had certified his good standing in good faith. The trial court noted that Brooks did not do anything to verify that he was in good standing when he applied, but only assumed he was. Brooks explained that he recently had been admitted to two other courts, and therefore had no reason to suspect he might not be in good standing. He also suggested that the question was whether his filing was considered by the OCA as retroactive, nunc pro tunc.
Although the judge admitted he was impressed with Brooks' skills as an advocate, and did not believe there was any affirmative or intentional misrepresentation to the court or fraud on the court, he felt that Brooks had an obligation to make sure all his i's were dotted and t's were crossed when he said he was a member in good standing, and decided to retroactively revoke the order admitting him pro hac vice. Brooks asked the court to be allowed to renew his application, as the statements in it now were completely accurate but the court found that was not appropriate because of the necessity of strict adherence to the requirements of the application. Brooks asked the court to sanction him for the previous application and entertain a new one; having to secure a new attorney after he had familiarized himself with the issues for three months would be a hardship for his clients. But the court did not wish to sanction him; the court stated it respected his abilities and a fine would send the wrong message.
In an order dated and entered August 29, 2007, the trial court vacated its prior order granting Brooks admission to practice before it pro hac vice. This order is the subject of the instant petition for writ of certiorari.
Afterwards, Brooks obtained a letter dated September 18, 2007, from the Appellate Division of the New York Supreme Court, explaining that it had no record of receiving the registration which Brooks represented he had mailed in March 2007, but because the OCA often experiences delays in receiving attorney re-registrations, it does not mark an attorney as delinquent until six months after the form and check were due. While it cannot issue a certificate of good standing if its records indicate that the statement and fee were not received within thirty days after the attorney's birthday, at no time was Brooks not entitled to practice law in the courts of that state, and he was never marked delinquent.
Certiorari is available to review orders denying a motion to appear pro hac vice. See, e.g., Clare v. Coleman (Parent) Holdings, Inc., 928 So.2d 1246 (Fla. 4th DCA 2006); Pepsico, Inc. v. Roque, 743 *438 So.2d 160 (Fla. 3d DCA 1999); Keller Indus., Inc. v. Yoder, 625 So.2d 82 (Fla. 3d DCA 1993). The order on review will have an adverse impact on Brooks' ability to seek pro hac vice status in the future in this and in other jurisdictions. Clare, 928 So.2d at 1249; Fla. R. Jud. Admin. 2.510(b)(3) (requiring attorneys who apply for admission pro hac vice in Florida to disclose all jurisdictions in which the attorney has been disciplined during the previous five years).
When pro hac vice admission is revoked, it ordinarily is the result of a motion alleging intentional and egregious misconduct, explicitly requesting this sanction. But Brooks' verified representation that he was in good standing in New York, when his renewal actually had not been timely received, was not alleged to be intentional misconduct. Nor did MB & H actually move for revocation; it merely furnished the court, the day before the hearing, with information that had been in its possession for over a month. Compare State Indus., Inc. v. Jernigan, 751 So.2d 680 (Fla. 5th DCA 2000) (denying certiorari relief from removal of out-of-state attorney who, at deposition, repeatedly called opposing counsel a liar). In Jernigan, the court commented that "A trial court may revoke the status of pro hac vice whenever it appears that counsel's conduct during any stage of the proceeding, including the taking of depositions, adversely impacts the administration of justice." Id. at 682 (emphasis added). See also Schlumberger Techs., Inc. v. Wiley, 113 F.3d 1553, 1561 (11th Cir.1997) (vacating denial of pro hac vice admission and commenting that great deference is given to trial court's decision to revoke pro hac vice status if counsel's conduct threatens to disrupt court proceedings or deliberately challenges court's authority; but if the conduct is allegedly unethical, appellate court insists that disqualification decision rest on violation of specific Rules of Professional Conduct rather than court's subjective opinion).
Here, the judge revoked Brooks' admission based only on his failure to corroborate his good standing before applying, an act which did not affect the administration of justice or disrupt any proceedings. Furthermore, unlike in Florida, where an attorney who is delinquent in paying bar dues automatically loses the status of good standing and cannot practice law until reinstated,[1] noncompliance with the requirement to re-register does not result in automatic suspension or preclude an attorney from practicing law in New York. While the form and fee are due biennially within thirty days after a member's birthday, because a number of renewals are delayed, the OCA does not consider an attorney to be delinquent until six months have passed from the date the form and check were due. (Ex. R) See Austria v. Shaw, 150 Misc.2d 541, 576 N.Y.S.2d 786 (N.Y.Sup.1991) (denying motion to dismiss action on ground plaintiff's counsel was precluded from practicing law when action was commenced for failure to pay *439 biennial registration fee; § 468-a of Judiciary Law, which imposes requirement, does not indicate that violation is cause for automatic suspension), aff'd sub nom. Austria v. Babineaux, 188 A.D.2d 271, 590 N.Y.S.2d 467 (N.Y.A.D. 1st Dep't. 1992). The period of six months had not yet elapsed from March 2007, either when Brooks was admitted pro hac vice, or even when his admission was vacated.
Petitioners point out that the current approved form for applying for admission pro hac vice must be verified based on the attorney's "knowledge and belief," Fla. R. Jud. Admin. 2.510(b), whereas the former rule 2.061(a), requiring the motion show that the attorney is in good standing in another state,[2] was interpreted to require the submission of a certificate of good standing. Had this rule not been changed, Brooks would have sought a certificate of good standing prior to applying, would have discovered the problem, and the harm from the challenged order would have been averted.
"The right of an attorney of another state to practice is permissive and subject to the sound discretion of the court to which he applies for the permission. The right to revoke this permission is inherent in the right to grant it." Parker v. Parker, 97 So.2d 136, 137 (Fla. 3d DCA 1957). Certainly a trial court's discretion to deny a motion to appear pro hac vice, or to revoke such admission, is quite broad. See Huff v. State, 569 So.2d 1247, 1249 (Fla.1990); Jernigan, 751 So.2d at 681. Nevertheless, it is not absolute, and must be balanced by a party's right to representation by counsel of choice. If foreign attorneys are obligated, immediately before moving for admission pro hac vice, to verify their good standing with every jurisdiction in which they are admitted, even if they have no reason to believe otherwise, then perhaps the rule should expressly require that applicants for pro hac vice status submit certificates of good standing.
The trial court apparently accepted Brooks' explanation that he had no reason to believe he did not continue to be in good standing; it did not find he had committed any intentional misconduct, refusing to sanction him even with the imposition of a fine. Its vacation of his status was merely for a technical reason which in no way adversely impacted the administration of justice. Even if it was appropriate technically to vacate Brooks' prior admission due to his lack of good standing on July 11, the trial court should have accepted his ore tenus motion to appear pro hac vice on August 29, when that deficiency no longer applied. The trial court's refusal to do so did not serve the ends of justice and we conclude that it constituted a departure from the essential requirements of law under the facts of this case.
For the foregoing reasons, we grant the petition and quash the August 29 order.
Granted.
WARNER, POLEN and FARMER, JJ., concur.
NOTES
[1] The Rules Regulating the Florida Bar provide registration and fees are due July 1, R. Regulating Fla. Bar 1-7.3(a); if not postmarked by August 15, a late fee is imposed and written notice is sent by registered or certified mail, and the member is "delinquent" if fees are not paid by September 30, R. Regulating Fla. Bar 1-7(3)(e), a delinquent member is not in good standing, R. Regulating Fla. Bar 1-3.2(a), and "shall not engage in the practice of law in Florida," R. Regulating Fla. Bar 1-3.6, until reinstated, R. Regulating Fla. Bar 1-7.5. However, if a membership fee delinquency is resolved by reinstatement within sixty days, it relates back to the date before delinquency and there is no sanction for practicing during the period of delinquency. R. Regulating Fla. Bar 1-3.7(e).
[2] In re Amendments to the Rules Regulating the Florida Bar and The Florida Rules of Judicial Administration, 907 So.2d 1138, 1145 (Fla.2005).