DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PREWITT ENTERPRISES, LLC,**
Appellant,

v.

**TOMMY CONSTANTINE RACING, LLC,** a foreign limited liability company, and **TOMMY CONSTANTINE,** a/k/a **THOMAS CONSTANTINE,** individually,
Appellees.

No. 4D11-4208

[January 27, 2016]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn A. Kelley, Judge; L.T. Case No. 502007CA003369XXXXMB.

James D. Tittle of Tittle, Kairalla & Logan, P.L., West Palm Beach, for appellant.

Thomas L. Hunker of The Hunker Law Group, P.A., Miami, for appellees.

FORST, J.

This case concerns an agreement and subsequent disagreement between two members of the auto-racing community. The jury rendered a verdict in favor of plaintiff/Appellant Prewitt Enterprises, LLC and awarded damages for breach of contract and fraudulent inducement. However, the fraudulent inducement verdict was reversed by the trial court, in favor of defendants/Appellees Tommy Constantine Racing, LLC and Tommy Constantine.[1] As set forth below, we reverse the trial court's judgment notwithstanding the verdict and remand for the trial court to reinstate the jury's award of damages for fraudulent inducement in favor of Appellant. Our decision renders Appellee's first cross-appeal argument

---

[1] "Appellant" will be used to represent Prewitt Enterprises, LLC and its managing member, Hal Prewitt. "Appellee" will be used to represent Tommy Constantine Racing, LLC and its president, Tommy Constantine. Both parties will be referred to in the singular.

for new trial — improper evidence — moot. We also affirm on Appellee's second argument for new trial, the denial of out-of-state attorney Dennis Wilenchik's motion to appear pro hac vice.

## Background

Appellant desired to join a championship-level auto-racing team, but wanted to find a team that was already fully funded. According to the testimony at trial, Appellee offered Appellant the opportunity to join his team. He specifically told Appellant that he did not need his money in order to run the team under the Tommy Constantine Racing name. Appellee indicated that he was already fully funded through sales of sponsorships. At one point, Appellee even suggested that he might not want to partner with Appellant because he did not actually need him. Appellant took the bait and agreed to work with Appellee.

Appellant and Appellee drafted and signed a written agreement after six weeks of discussions. The written agreement contained a requirement that Appellant pay Appellee nearly one million dollars in four installments. The written agreement specified that the payments "shall [be] use[d] . . . to provide" various racing programs and made no comment about Appellee's ability to pay for the program. The agreement also referenced associate-level sponsorships that Appellant could use to generate funds. The agreement did not contain an integration clause, and instead included a provision indicating that it would only be binding "until such time that [the parties] may execute a formal contract ('Definitive Agreement')."

Before the first race, Appellee called Appellant to let him know there were problems with some of the vehicles and the team would not race. Appellant later learned that the reason for "the problems" was that Appellee did not have the money necessary to pay for certain components of the cars being built. Appellant terminated the contract when he learned that Appellee lacked the money to fund the team.

Appellant sued Appellee to recover his lost initial payment. Appellant proceeded on two claims: (1) a fraudulent inducement claim based on Appellee's alleged misrepresentation of his finances, and (2) a breach of contract claim for the failure to actually provide a team. Appellee filed counterclaims for breach of contract and replevin.

Before trial, the parties entered into a Joint Pretrial Stipulation. In that stipulation, the parties agreed that "[Appellee] did not have the ability to fund, independent of contribution of funds from [Appellant], a five car racing team . . . ."

2

About five weeks before trial, out-of-state attorney Dennis Wilenchik filed a pro hac vice motion to appear on behalf of Appellee. Wilenchik had been practicing law in Arizona for thirty-three years and held multiple certifications, ratings, awards, and the like. The motion revealed that Wilenchik had recently received a letter of admonition from the Arizona Bar because of an inappropriate letter sent by Wilenchik to a court. The motion also noted that "[a]ny other prior investigations were fully dismissed without any complaint."

The trial court denied Wilenchik's motion based in part on its incompleteness, but did so without prejudice so that Wilenchik could more fully complete the application. A week and a half before trial, Wilenchik submitted a new application. Along with the application, Wilenchik submitted an affidavit describing his credentials and impeaching the credibility of various articles that Appellant had cited in the hearing on the first motion. He also submitted a complete discipline record history from Arizona and copies of a number of the items referenced in the first hearing.

The court again denied Wilenchik's motion. The order stated that "[t]he Court [found] that this appearance is likely to adversely effect [sic] the administration of justice and disrupt these proceedings . . . ." This conclusion came after the court reviewed and described the materials included in Wilenchik's affidavit.

On the morning of the first day of trial, Appellee requested that the court reconsider Wilenchik's motion. The trial court refused, saying "I'm not going to rehear that motion. I mean, there are several reasons why I didn't think it was appropriate in this case to admit anyone at the 11th hour. That's why I did it." As a result of Wilenchik not being able to appear, Appellee was represented by a different attorney who had never previously sat first-chair for a jury trial and who, according to Appellee, "made repeated blunders which severely prejudiced" his case.

The jury found for Appellant on both of his counts. The jury specifically found that Appellee made "materially false statements . . . that induced [Appellant]" to enter into the agreement.

Appellee made various post-trial motions, including a motion for judgment notwithstanding the verdict and a motion for new trial based both on improper evidence being admitted and the denial of Wilenchik's pro hac vice motion. The court granted Appellee's motion for judgment notwithstanding the verdict but denied the other motions. Appellant appealed the grant of judgment notwithstanding the verdict and Appellee

3

cross-appealed the denial of his motion for new trial and the denial of the pro hac vice motion.

## Analysis

I. *Judgment Notwithstanding the Verdict*

Judgments notwithstanding the verdict are reviewed de novo. *Atkinson v. Anderson*, 77 So. 3d 768, 769 (Fla. 4th DCA 2011). "[This] [C]ourt must view all of the evidence in a light most favorable to the non-movant, and, in the face of evidence which is at odds or contradictory, all conflicts must be resolved in favor of the party against whom the motion has been made." *Collins v. Sch. Bd. of Broward Cnty.*, 471 So. 2d 560, 563 (Fla. 4th DCA 1985). "Only where there is no evidence upon which a jury could properly rely, in finding for the plaintiff, should a directed verdict be granted." *Id.*

Although the trial court relied on the economic loss rule in granting Appellee's motion for judgment notwithstanding the verdict, both parties agree on appeal that the economic loss rule no longer applies to this case. *See Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013) (limiting the economic loss rule to only product liability claims). However, Appellee relies on Justice Pariente's concurrence in that case, which made clear that a tort still must be independent from a contractual breach under the common law. *Id.* at 409; *see also Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) (allowing tipsy-coachman affirmances).

The question on appeal therefore turns on the distinction between fraud in the inducement (a false representation is made and relied upon in forming the contract) and fraud in the performance (a party to the contract claims to have performed but has actually just tricked the other party into believing that they have). For the reasons described below, we hold that Appellee's fraudulent ("knowingly false") representations in this case were of a present fact and therefore constituted fraud in the inducement.

Because Appellee relies most heavily on *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74 (Fla. 3d DCA 1997), we use that case to help draw the distinction between the two types of fraud at issue. In *Key Largo*, the three representations made were that the plaintiffs "would become part of the Radisson Hotels family"; the plaintiffs "were promised to be the sole beneficiaries of [a] reservation system"; and the plaintiffs were assured that "more than 40% of [plaintiffs'] room reservations would be derived from the reservation system." *Id.* at 76. These were all representations of *future* conduct and circumstances. The Third District therefore correctly

4

found that the fraud claim was not independent of the contract. *Id.* at 78.

In the instant case, viewing the evidence in the light most favorable to Appellant,[2] Appellee represented that he *already had* the funding for the team and did not need Appellant's money. As such, his representations were about *present* circumstances, i.e., his present funding ability, verifiably true or false at the time the representation was made. The fraudulent misrepresentation claim therefore did not merge with the breach of contract claim and the independent tort rule does not support the trial court's grant of Appellee's motion for judgment notwithstanding the verdict. In line with the Fifth District in *La Pesca Grande Charters, Inc. v. Moran,* 704 So. 2d 710, 713 (Fla. 5th DCA 1998), and consistent with the Third District in *Key Largo*, Appellee's knowingly false statements of *present circumstances* constitute fraud in the inducement if the other elements of that tort were met (which they were).

If Appellee had represented that he *would have* the money come race time, or that he *would be able* to pay, he would have been making a representation of *future* ability, circumstances, or performance, which would merge with an underlying breach of contract claim. The difference is between telling someone that you have a $10 bill in your pocket right now to pay for lunch (present) as opposed to promising to gladly pay them Tuesday for a hamburger today (future). Intervening circumstances would be able to affect the latter, but the former is either true or false at the time the representation is made.

In the instant case, Appellee stated that he had far more than $10 in his pocket, enough to fund a full racing team, and Appellant was induced to act in reliance on Appellee's fraudulent representations about *present* circumstances. Accordingly, we reverse the trial court's grant of Appellee's motion for judgment notwithstanding the verdict and remand for entry of judgment consistent with the jury's verdict.

II. *Motion for New Trial based on Pro Hac Vice Motion*

Trial court rulings on motions to appear pro hac vice are reviewed for

---

[2] We note that this appears to be where the trial court erred. The court recognized that Appellee's statements "could be argued to be independent of performance," but interpreted it otherwise. When presented with a motion for judgment notwithstanding the verdict, however, a court must view all evidence in the light most favorable to the non-movant. Had the trial court viewed the evidence through the proper lens, it seems from the order that it would have reached the same conclusion we reach today.

abuse of discretion. *Huff v. State*, 569 So. 2d 1247, 1249 (Fla. 1990). "'Discretion . . . is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.'" *Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) (quoting *Delno v. Mkt. St. Ry. Co.*, 124 F.2d 965, 967 (9th Cir. 1942)).

A pro hac vice motion should normally be granted, but may be denied if there exists a legally permissible basis for doing so. *THI Holdings, LLC v. Shattuck*, 93 So. 3d 419, 423-24 (Fla. 2d DCA 2012). One proper reason for denying a pro hac vice motion is if granting it will "'adversely impact[] the administration of justice.'" *Brooks v. AMP Servs. Ltd.*, 979 So. 2d 435, 438 (Fla. 4th DCA 2008) (quoting *State Indus., Inc. v. Jernigan*, 751 So. 2d 680, 682 (Fla. 5th DCA 2000)).

Here, the trial court specifically found that Wilenchik's appearance would adversely affect the administration of justice and disrupt the proceedings. It based this conclusion on Wilenchik's motion and attached exhibits. In particular, the court described how Wilenchik appeared to be boasting about having obtained a mistrial in the past and explained how Wilenchik's Bar complaints from Arizona concerned the court. Although Wilenchik was only disciplined once by the Arizona Bar, his documents indicate the Arizona Bar had a "robust debate" over whether to proceed with investigations on other charges. The potential offenses described include insulting a judge (calling him "a danger to public safety") and attempting to improperly contact a judge presiding over a case. The trial court found that "it appears that if a Florida attorney had committed these acts which have been disclosed," three Disciplinary Rules "would be violated."

Wilenchik apparently has a long-standing disagreement with the website on which most of the articles used by the trial court were posted. These articles were submitted to the court by Wilenchik. Although he urged the court to give little weight to the "tabloid," his affidavit in support of his motion does not deny the contents of the articles nor highlight the deficiencies; it simply characterized them as "biased" and "trumped up."

We do not necessarily agree the evidence relied upon by the trial court actually established that Wilenchik's appearance would adversely impact the administration of justice or disrupt the proceedings. However, the question on appeal is not whether the evidence established problems with Wilenchik's motion being granted in our minds, but whether "'no reasonable [person] would take the view'" that Wilenchik's appearance would affect the administration of justice. *Canakaris*, 382 So. 2d at 1203

(quoting *Delno*, 124 F.2d at 967). We cannot say that the trial court's determination of this issue was unreasonable, even if we might have come to a different determination. For that reason, we hold that the trial court did not abuse its discretion in denying Appellee's motion for new trial based on the denial of Wilenchik's pro hac vice motion. We therefore affirm this issue.

## Conclusion

Because the statements made in this case were of a *present* circumstance rather than a *future* one, they may properly serve as the basis of an independent tort based in fraud without merging into the breach of contract claim also asserted. Additionally, we find no abuse of discretion with the trial court's denying Wilenchik's pro hac vice motion.

We therefore reverse the trial court's grant of Appellee's motion for judgment notwithstanding the verdict and affirm the trial court's denial of Appellee's motion for new trial. Accordingly, we remand with instructions for the trial court to enter judgment in favor of Appellant, consistent with the jury's verdict.

*Reversed and remanded for proceedings consistent with this opinion.*

WARNER and STEVENSON, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

7