DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CITIZENS PROPERTY INSURANCE CORPORATION,**
Appellant,

v.

**LLUNAILY HERNANDEZ,**
Appellee.

No. 4D21-2469

[April 12, 2023]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. CACE18-29112(14).

Daniel J. Santaniello, Edgardo Ferreyra, Jr., and Lauren J. Smith of Luks, Santaniello, Petrillo, Cohen & Peterfriend, Stuart, for appellant.

Melissa A. Giasi and Erin M. Berger of Giasi Law, P.A., Tampa, for appellee.

WARNER, J.

Citizens Property Insurance Corporation timely appeals a final judgment in favor of its insured homeowner entered after the trial court granted a judgment notwithstanding the verdict ("JNOV"). Because the evidence taken in the light most favorable to Citizens supported the verdict, the court erred in granting the JNOV. We reverse.

The homeowner insured her Coral Springs home with Citizens. On September 10, 2017, Hurricane Irma blew across the homeowner's home. While at first the homeowner did not think her home had been damaged, months later she noticed leaks. She filed a claim with Citizens, asserting that her home was damaged by the strong winds and heavy rains. When Citizens denied the claim, the homeowner filed the underlying breach of contract case against Citizens and the case proceeded to trial.

At trial, the homeowner's public adjuster testified to damage which Hurricane Irma had inflicted on the homeowner's roof, including cracked tiles on the roof and damage to the roof membrane, and damage to the

home's interior from water leaks. The damage was consistent with a wind event. The adjuster estimated that the cost to repair the damage to the roof and other parts of the house was $73,281.53.

A professional engineer also testified for the homeowner. He conducted a thorough inspection of the home, both inside and out. He observed areas in the home where water leaks had occurred. On the roof, he found broken tiles and damage to roof membrane. He testified that within a reasonable degree of engineering probability "there's a very high probability that much of the damage to the roof, including the openings that were created in the roof tile underlayment, and then subsequently the water that got through those openings and showed itself up as leaking either around the perimeter of the roof or in the attic or in the house was attributable to Hurricane Irma."

The homeowner and her partner both testified regarding her claim. After the hurricane, they did not notice any damage besides some damage to the screen enclosure and a few broken tile pieces. Months later, they noticed spots in the master bedroom closet which they did not at first attribute to hurricane damage. They also noticed a spot in the dining room. Later, the homeowner hired her public adjuster to examine the property, and he discovered the damage to the roof and interior.

Citizens relied on the testimony of two engineers from the same firm, one having inspected the property and one having formed opinions as to the cause of the damage. The inspector saw some small spots on the ceilings in a few rooms. He testified that he could not say if these spots were water damage, but later testified that it "[was]n't water damage." On the exterior of the homeowner's property, the inspector observed damage to the overhangs, including rotted wood, soffit, and fascia. On the roof, the inspector observed a few cracked tiles, some of which had been patched, and a few tiles that were loose but still in place. Solar panels on the roof, a tiki hut, and a screened enclosure were all undamaged.

The second engineer, who had twenty-five years of experience inspecting thousands of tile roofs, offered opinions regarding the cause of the damage. After reviewing the 173 photographs from his co-employee's inspection, the second engineer opined that he saw no evidence of wind damage to the roof from Hurricane Irma, noting that solar panels on the roof were undamaged even though those panels catch the wind first. Many tiles were loose, but the wind had not lifted and damaged them. He explained to the jury that the inspector's photos did not show the type of damage which would occur from a hurricane. He opined that the cracks

in the tile were caused by foot traffic. He was also able to point out older repairs to the roof based on the paint color and the mortar used.

As to the interior, he also concluded that the spots on the ceiling did not look like water damage. If the roof had been leaking, he would have expected to see more damage during the year between the hurricane and the inspection in 2018.

In addition, Citizens' own adjuster testified that he inspected the property and did not observe any damage to the interior other than a ceiling stain in the dining room. He did not observe any damage in the attic or any missing tiles on the roof. He took 125 photos which were placed into evidence.

At the close of the case, the homeowner moved for a directed verdict. The homeowner claimed that Citizens failed to meet its burden that the damages were excluded by failing to show an opening in the roof causing interior water damage did not occur. The homeowner maintained that Citizens' expert did not have an answer as to what caused the tile damage, breakage, cracks, except for "foot traffic." The court reserved ruling on the motion.

After closing arguments, the jury deliberated and reached a verdict for Citizens. Once the jury was excused, the homeowner's counsel renewed her motion for directed verdict "based upon lack of evidence and burden." The court noted that the post-trial motion for directed verdict was "actually a Motion for a New Trial . . . or a Judgment Notwithstanding the Verdict."

The court questioned Citizens' counsel with respect to counsel's cross-examination of the homeowner regarding a prior insurance claim for kitchen damage, which was the subject of a motion in limine. Defense counsel had referenced the claim in cross-examining the homeowner, believing that her testimony had opened the door to raising it. The court also raised concerns that Citizens' engineer who gave the opinions on causation referred to them as "our" opinions, when the court had allowed only one engineer to testify for each party. The opinion engineer had corrected himself to explain that because the inspector engineer and he worked in the same firm, it was his usual practice to use "we" to refer to the firm's work. Despite the explanation, the court considered this a violation of the court's order and constituted bolstering. Finally, the court was concerned that Citizens' expert's opinions lacked a sufficient factual basis. The court added it was concerned that Citizens' expert stated he had seen no evidence of wind damage, but then "did say there was a leak."

Citizens' counsel argued that the court was making a credibility determination.

Concerned that the court orders were violated, and that evidence came in which should not have been published to the jury, the court granted the JNOV. In its order, the court stated that the verdict was "based on prejudice and bias caused by defense questions and argument implying fraud on the part of the [homeowner]." The court objected to Citizens' questioning of the homeowner's expert as well as the violation of its order in limine and on restriction of the number of engineers whom Citizens could use to testify, concluding that both Citizens' engineers offered opinions. Finally, the court found that the underlying facts did not support the engineers' testimony and did not exclude the hurricane as a possible source of damage to the roof. The court then entered a judgment for $73,281.53, the amount which the homeowner's expert testified were the damages. From this final judgment, Citizens appeals.

## Analysis

"Judgments notwithstanding the verdict are reviewed de novo." *Prewitt Enters., LLC v. Tommy Constantine Racing, LLC*, 185 So. 3d 566, 569 (Fla. 4th DCA 2016). This Court must "view all of the evidence in a light most favorable to the non-movant, and, in the face of evidence, which is at odds or contradictory, all conflicts must be resolved in favor of the party against whom the motion has been made." *Id.* (quoting *Collins v. Sch. Bd. of Broward Cnty.*, 471 So. 2d 560, 563 (Fla. 4th DCA 1985)). "Trial courts may grant motions for JNOV only when there is no evidence or inferences which may support the opposing party's position." *Fast Laundry II v. Gray*, 861 So. 2d 81, 82 (Fla. 3d DCA 2003).

The court instructed the jury, as agreed by the parties, as to the homeowner's burden to establish liability on the part of Citizens:

> [The homeowner] has the burden to establish by the greater weight of the evidence that a covered peril first damaged the building causing an opening in the roof and that the rain entered through the opening. . . . if the greater weight of the evidence supports [the homeowner's] claim that a covered peril damaged the building causing an opening in the roof and the rain entered through that opening, then the burden shifts to [Citizens] to prove by the greater weight of the evidence that there is no coverage for claimed damages because damages were caused by wear and tear or deterioration.

4

In sum, the homeowner had to prove that there was an opening in the roof, caused by wind from Hurricane Irma, through which rain entered.[1] If the homeowner satisfied that burden, then Citizens was responsible unless it proved that the damage was excluded by wear and tear and deterioration.

While the homeowner and her expert presented testimony that there was wind damage to the roof which caused water leakage, Citizens' witnesses testified that that there was no wind-related roof opening created by Hurricane Irma. Citizens' expert reviewed 173 photographs entered into evidence and was able to explain why the damage shown in the photos was not attributable to wind damage. In the interior, the expert could not exclude a spot in the family room as showing signs of a water leak, but he explained that he could not determine when a leak may have occurred and would have expected more damage had it resulted from a hurricane. He explained that the spot was positioned below the intersection of the two roofs where typically leaks in the flashing occur, and that because this was an older roof, there would be places where water could leak in. Despite this, his opinion remained that the homeowner's roof did not suffer wind damage as a result of the hurricane.

Taking all inferences in favor of sustaining the jury's verdict, ample evidence supported the verdict. This was a contest of dueling witnesses, as the homeowner's witnesses saw wind-driven damage to the home while Citizens' witnesses saw none. In addition to the expert testimony, Citizens offered over 300 photographs of the homeowner's roof while she offered fewer than ten. The jury clearly accepted Citizens' expert's opinions that there was no wind related damage to the roof. "The jury should decide the issues where there is the possibility of different conclusions or inferences

---

[1] The policy applicable at the time of the claimed loss provided:

SECTION I - PERILS INSURED AGAINST
A.    Coverage A- Dwelling And Coverage B-Other Structures
1.    We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property.
        . . . .
2.    We do not insure, however, for loss:
        . . . .
b.    Caused by:
        . . . .
(8)    Rain . . . to the interior of a building unless a covered peril first damages the building causing an opening in a roof or wall and the rain . . . enters through this opening.
(9)    Any of the following:
(a)    Wear and tear, chipping, . . . or deterioration[.]

from the evidence." *Vecta Cont., Inc. v. Lynch*, 444 So. 2d 1093, 1094 (Fla. 4th DCA 1984).

The trial court was concerned that Citizens' expert failed to consider the homeowner's testimony that roof tiles were missing, because she testified about finding three small roof tile fragments on the ground after Irma. The homeowner repaired the tiles. However, Citizens' expert testified that the repairs to the cracked tiles that he saw predated the painting of the roof in 2012. Where there is expert opinion upon which the jury can rely to decide an issue, then the issue is properly submitted to a jury and a motion for JNOV should be denied. *See Hancock v. Schorr*, 941 So. 2d 409 (Fla. 4th DCA 2006). "It is not the function of the trial judge or the appellate court to (re)weigh evidence." *Vecta Cont.*, 444 So. 2d at 1094.

In summary, with every reasonable conclusion construed in Citizens' favor, the jury could have agreed with Citizens' expert that winds from Hurricane Irma did not create an opening in the homeowner's roof causing damage. Accordingly, competent, substantial evidence supports the jury's verdict, and the court's grant of a JNOV was improper.

The homeowner argues, however, that the court's order was not really a JNOV but a sanction order for the defense violating the court order on expert testimony and matters in limine. While the court was concerned with the alleged violations, it did not enter a sanction order. The order specifically states that it was based upon the homeowner's ore tenus motion for JNOV. We will not presume that the court meant something other than what the order states.

Moreover, the court did not base the JNOV on the grounds which the homeowner raised. Instead, the court's order addressed "the prejudice and bias caused by defense questions and argument."[2] The proper vehicle to correct a verdict based on prejudice is a motion for new trial, not a JNOV. *See Fla. Publ'g Co. v. Copeland*, 89 So. 2d 18, 20 (Fla. 1956). But the homeowner did not request a new trial.

For the foregoing reasons, we reverse the final judgment, direct the reinstatement of the jury verdict and for entry of judgment on the verdict.

---

[2] To the extent the record suggests that the court entered the JNOV on its own initiative, Florida Rule of Civil Procedure 1.480 does not provide for the trial court to enter an order of JNOV on its own, whereas Florida Rule of Civil Procedure 1.530(d) provides for the court on its own initiative to order a new trial "for any reason for which it might have granted . . . a new trial on motion of the party."

*Reversed.*

GERBER and LEVINE, JJ., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**